## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GENESIS OFFICE SYSTEMS, INC.** | \* | |
| | \* | |
| **Plaintiff,** | \* | |
| | \* | |
| v. | \* | Civil Case No.: <u>PJM 14-2704</u> |
| | \* | |
| **PNC BANK, NATIONAL ASSO.** | \* | |
| | \* | |
| **Defendant.** | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Genesis Office Systems, Inc., Plaintiff, by its attorney, Rickey Nelson Jones, responds to PNC Bank, National Association's motion for summary judgment as follows:

<u>Defendant's Undisputed Material Facts Section</u>

Paragraphs 3 and 4 are NOT undisputed.  The statements received from Defendant (Exhibit "B" of Complaint) indicate "TD REDEMPTION" but do not evidence redemption since no indication on the statement reveals who, when, where, or how the certificates were redeemed.  The statements were never provided to Plaintiff until <u>after</u> he sought redemption (i.e., created to justify keeping Plaintiff's funds), and Defendant admitted in letter form (Attached Exhibit "1") and in discovery responses (e.g., interrogatory answers 6 and 15) to not having records about who, when, where, or how the certificates were redeemed.   The "Certificate of Deposit Statement" Defendant created in response to Plaintiff's request for its funds does nothing but attempt to support

the Defendant's attempt to keep funds it has no right to.  Why did Defendant fail to provide such records to Plaintiff in the past, or any records concerning the CDs?  The reason is simple.  Defendant discarded or lost such records during its transition from Calvert Bank & Trust Company to PNC Bank,[1] and hence, it failed to keep Plaintiff informed about its CDs with 1099 statements, status reports, interest rate adjustments, 10-day period notice to redeem or allow renewal, etc.  In fact, the fraudulent nature of the Certificate of Deposit Statements provided to Plaintiff is clear when one of the statements is examined closely.

The "Certificate of Deposit Statement" for Plaintiff's $100,000.00 has the same identical language governing it as on the back of the $10,000.00 CD (Exhibit "A" of Complaint).  When Plaintiff asked Defendant in interrogatory #5 about the bank's policy, practices, and procedures for handling CDs, it flatly refused to answer or in anyway counter the language governing them on the back of the CDs.  In the fourth paragraph of the governing language, it states clearly that if the account is not withdrawn within ten days following maturity, it will automatically be renewed on the same terms, and with the lone exception of the bank giving special notice affecting the interest rate, **no** additional deposits or partial withdrawals are permitted.  When the "Certificate of Deposit Statement" on the $100,000.00 is examined, it shows the month and day it was acquired (i.e., 08/29), and at the end, it shows the alleged month and day it was redeemed (i.e.,

---

[1] In response to interrogatories, Defendant flatly refused to provide its rules in place for [1] record maintenance and storage (#14) and [2] creating, monitoring, and ending CDs (#10).

09/09). This cannot be correct since September 9th would have been eleven days after maturity, constituting one day <u>beyond</u> the right to withdraw funds, in violation of the terms of the CD and not allowed!   Put another way, when Defendant rushed to create the certificate statements in response to Plaintiff's C.E.O.'s attempt to redeem them, it made a mistake which revealed the false nature of them.

<u>Plaintiff's Tax Returns</u>

Yes, Plaintiff's 2002 tax return shows the absence of the CD Funds that were shown in 2001, and Plaintiff's tax preparer's assumption that the CD Funds were directed to repay shareholder (i.e., the C.E.O.) debt is partially correct.  Where the assumption is incorrect is in making the "mental leap" and saying the CDs were therefore redeemed. These are two totally different things.   As Plaintiff's C.E.O. stated in his affidavit, the CD funds were taken off the books because the company owed him more than the CDs were worth.   That is not inconsistent with Plaintiff's tax returns or the tax preparer's assumption; it is consistent.   Because Defendant does not have records on the who, when, where, or how of redemption regarding the Plaintiff's certificates, he resorts to mental "leaps" to justify keeping Plaintiff's funds.  Plaintiff's family business has often [1] received money from the C.E.O., [2] paid money to the C.E.O., [3] retained the C.E.O.'s money and never returned it, and [4] adjusted its books to account for the sacrifices of the C.E.O.   None of that has anything to do with Defendant keeping over one hundred and ten thousand dollars of the company's money without one credible

document justifying it.  Even the argument that Plaintiff's business records were handled in an unusual manner does not support Defendant's claim that such proves the company's CDs were redeemed by someone, at sometime, at someplace, in some manner, which Defendant has no clue or record concerning.   In essence, the Defendant seeks to persuade the court, as a bank, to overlook its absence of records about who redeemed a substantial amount of corporate funds, when such was done, where it was done, and how the redemption occurred.   In addition to asking the court to "close its eyes" to a banking abnormality, Defendant wants the court to ignore logic.  Private citizens must sign a withdrawal slip to acquire one hundred dollars from their own bank account; how much more is there a need for a signature for over one hundred thousand dollars?  Plaintiff trusted Defendant to secure its funds during prosperous times.  Now, when Plaintiff is in need of those funds, it is forced to expend limited funds needlessly to obtain its own money.  Defendant's failure to keep records on an "open" and current account cannot be attributed to Plaintiff such that the latter is deprived of its funds.  As is typical of banking relations, the customer trusts the bank to secure its funds, regardless of notices or the absence thereof.

   Disturbing and condemning is the Defendant's concealment of highly relevant information in discovery (in contrast to Plaintiff's openness about its finances). Defendant flatly refused to provide [1] the identity of its employees who signed the CD (despite signatures legible enough for an employer to identify an employee), [2] the

identity of the person(s) responsible for providing funds for CDs redemption, [3] the person(s) responsible for assuring proper records are kept on CDs and who redeems them, [4] the banking regulation PNC relies on in issuing and monitoring CDs, [5] the identity of who it believes redeemed the CDs for Plaintiff, [6] verification that the CDs were in fact redeemed, and [7] who interacted with Plaintiff or its officers concerning the CDs.  The aforementioned inquiries came from Plaintiff's interrogatory numbers 5, 7, 8, 9, and 16.  When Plaintiff informed Defendant of its lack of "good faith" in responding to discovery, it refused to supplement.

Statute of Limitations

For nearly a century, Maryland law has maintained that the statute of limitations is tolled or its bar removed with respect to an acknowledged obligation.  Doughty v. Bayne, 222 Md. 361, 160 A.2d 609 (1960); Crawford v. Richard, 197 Md. 122, 79 A.2d 143 (1951); Owings v. Dayhoff, 159 Md. 403, 151 A. 240 (1930); Knight v. Knight, 155 Md. 243, 141 A. 706 (1923).  The automatic renewal provisions of the CDs rendered them "an acknowledged obligation."  There were no notices from Defendant about altering any terms of the CDs or abandoning its obligations concerning them.  Hence, they remained "open" and current.   In short, the statute of limitations never ran on this business, and Defendant's reliance thereon fails.  As Plaintiff's C.E.O. revealed during his deposition, he was not really concerned about the absence of notice about the company's CDs since [1] he knew the funds were in the bank and [2] he followed the interest rate in the

newspaper and on televised finance programs.

Plaintiff's Corporate Charter

Plaintiff's corporate charter has been revived after satisfying the formalities of paying a required fee and filing the appropriate document (Attached Exhibit "2").  Hence, all of Defendant's arguments about Plaintiff's corporate charter fails.   Once incorporated in accordance with the requirements of Maryland Law, courts are bound to regard a corporation until dissolution by judicial proceeding.  Inasmuch Gospel Mission v. Mercantile Trust Co. of Baltimore, 184 Md. 231, 40 A.2d 506 (1945).

**WHEREFORE,** Plaintiff respectfully requests that the court grant Plaintiff's motion for summary judgment and Order Defendant to return Plaintiff's corporate funds.

/s/
Rickey Nelson Jones
Law Offices of Reverend Rickey
    Nelson Jones, Esquire
3rd  Floor — Suite 5
1701 Madison Avenue
Baltimore, Maryland 21217
410-462-5800
joneses003@msn.com
***Attorney for Plaintiff***

**CERTIFICATE OF SERVICE**

Genesis Office Systems, Inc., hereby gives notice that on this 14th day of April, 2015, it served (via CM/ECF) Plaintiff's Response To Defendant's Motion for Summary Judgment on its counsel of record – Michael S. Barranco, TREANOR POPE & HUGHES, PA., 500 York Road, Towson, Maryland 21204.

/s/
Rickey Nelson Jones

Attorney for Plaintiff