```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                         SOUTHERN DIVISION


 3


 4   GENESIS OFFICE SYSTEMS,    :  Civil Action No.
     INCORPORATED,
 5                             :  PJM 14-2704
             Plaintiff,
 6       v.                     :

 7   PNC BANK, NATIONAL         :  Greenbelt, Maryland
     ASSOCIATION,
 8                             :
             Defendant.            Monday, June 15, 2015
 9   _____/  10:05 A.M.

10


11             TRANSCRIPT OF MOTIONS PROCEEDINGS
           BEFORE THE HONORABLE PETER J. MESSITTE
12                 UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:    RICKEY NELSON JONES, Esquire
                           Law Offices of Reverend Rickey
15                         Nelson Jones, Esquire
                           1701 Madison Avenue, Third Floor, Suite 5
16                         Baltimore, Maryland  21217
                           410-462-5800
17


18   FOR THE DEFENDANT:    MICHAEL S. BARRANCO, Esquire
                           Treanor, Pope & Hughes, PA
19                         500 York Road
                           Towson, Maryland  21204
20                         410-494-7777

21


22


23   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

24        COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

25
```

```
1                    P–R–O–C–E–E–D–I–N–G–S

2          THE DEPUTY CLERK:  The matter now before this Court is

3    Civil Action Number PJM 14–2704, Genesis Office Systems,

4    Incorporated versus PNC Bank, National Association.  The matter

5    is before the Court for motions hearing.

6          THE COURT:  All right.  Counsel, identify yourselves,

7    first, for plaintiff and then for defendant.

8          MR. JONES:  Yes, Ricky Nelson Jones, Your Honor.

9    Counsel for the plaintiff Genesis Office Systems, Incorporated.

10         MR. BARRANCO:  Good morning, Your Honor.  Michael

11   Barranco on behalf of defendant, PNC Bank.

12         THE COURT:  All right.  Mr. Barranco, let's begin with

13   your motion.

14         MR. BARRANCO:  Thank you.

15         Does Your Honor prefer that I go from the center --

16         THE COURT:  Whatever works for you is fine.

17         MR. BARRANCO:  Your Honor, this case involves a claim

18   by the plaintiff that it took out two CDs from PNC Bank.  One

19   back in 1997, the another in 2001.  And that according to the

20   owner's testimony, Mr. Hawkins, he put these CDs under a

21   mattress and then only discovered them a couple years ago, and

22   went into a PNC --

23         Actually, the CDs were originally taken out with the

24   predecessor bank, but for all intents and purposes, PNC is the

25   successor to the bank that the CDs were originally taken out.
```

```
 1              Mr. Hawkins says, he goes into a PNC branch and they
 2     tell him, they have no record of these.  They research it and
 3     they find some statements on microfiche that show that the CDs
 4     were cashed out over a decade ago.
 5              The plaintiff, nevertheless, filed suit and we're here
 6     today on PNC's Motion for Summary Judgment.  There is really two
 7     primary grounds.  One is that the statements of PNC Bank, the
 8     records -- the business records that PNC Bank has shows that the
 9     $10,000 CD was redeemed in the amount of $12,482.92 on
10     March 29th, 2002.  And the $100,000 CD was redeemed in the
11     amount of $103,998.60 on September 9th, 2002.
12              And as you go through those statements, you can see
13     that the amounts are completely consistent with what the
14     renewals -- the $10,000 CD had a six-month renewal and it had an
15     original 4.6 percent interest rate.  And if you go through and
16     you look in the statements, and you see when it -- when it shows
17     that the CDs were renewed and so forth, it comes out with the
18     correct amounts and the dates are -- demonstrate that -- even
19     though it doesn't have the year, but you can -- going from the
20     starting year, you can ascertain from the statements that the
21     $10,000 CD was redeemed on March 29th, 2002 and the $100,000 CD
22     was redeemed on September 9th, 2002.
23              Now, in -- at the time that we deposed Mr. Hawkins in
24     this case, he produced no records on the part of -- on the part
25     of Genesis that shows anything from that time period.  And so,
```

1    we subpoenaed the accountant and in response to our subpoena,

2    the accountant produced some of the tax records from the years

3    at issue.  And then he also prepared on his own a statement that

4    explained that the -- that the money was used to cover corporate

5    losses and repay a loan.

6           And so, we filed Summary Judgment -- and by the way,

7    at the time of this -- well, I'll get to this in a minute, but

8    we filed Summary Judgment and the plaintiff's response to that

9    with an affidavit from Mr. Hawkins where he says, oh, well, the

10   reason -- the reason that the -- on my tax returns that the CDs

11   are not shown anymore, because the tax returns that we attached

12   to our motion and that the accountant looked at showed that

13   there was a reduction from one year to the next back in 2002, I

14   guess it was.

15          And it showed that in one year there was a cash on

16   hand, which includes CDs, was 141,000 at the beginning of the

17   tax year and 23,421 at the end of the tax year.  And so you've

18   got this hundred -- you know, that's more than $110,000, which

19   would explain, in other words, the tax records of the plaintiff

20   itself, explains that the CDs were no longer part of -- no

21   longer an asset of the company.  They had been redeemed and used

22   for other purposes.

23          And in response to that, Mr. Hawkins files an

24   affidavit that says, oh, well, I can explain why this no longer

25   appears on our corporate taxes, which are filed under penalty of

```
1    perjury with the U.S. Government.  And I can explain what the
2    accountant is trying to say and that is that I stopped treating
3    those CDs as a company asset, and I treated them as my own even
4    though I left them in the bank.
5         Well, I deposed Mr. Hawkins for several hours and I
6    asked him every which way, you know, questions about the
7    records, about where the money went and so forth.  And no
8    time -- any time in response to my questions did Mr. Hawkins
9    ever say that, oh, well, you might not find these as our company
10   records anymore, because I started treating them as my own and
11   not the company's.
12        And, in fact, Mr. Hawkins -- and I referenced the
13   specific testimony in our reply memo -- said, you know,
14   essentially -- I said, the accountant, he's going to look back
15   when he's preparing his balance sheet --
16        THE COURT:  Slow down a little bit.
17        MR. BARRANCO:  I'm sorry, Your Honor.  I do tend to
18   rush.
19        But, basically, I asked Mr. Hawkins specifically about
20   this issue of, you know, are we going to see this on your tax
21   returns?  Are we going to see this on the accounting records?
22   And he says, I don't know the answer.  We'll find out through
23   his records, meaning the accountant.
24        So Mr. Hawkins -- and then the next thing I say, I ask
25   him, so you don't know -- "You don't know why your tax returns
```

```
 1   don't reflect the CDs you contend the company owned at that

 2   time?"  And he says, "I don't know, sir.  I don't know."

 3          So I'm deposing him in January of 2015 and he says, I

 4   don't know why it might not reflect on our tax returns.  You're

 5   going to have to ask our accountant.  So, that's precisely what

 6   I did after Mr. Hawkins' deposition.  I went and asked the

 7   accountant.  The accountant explained, it's because there were

 8   corporate losses, the money was used, the CDs were cashed in.

 9          And then Mr. Hawkins comes up with this affidavit in

10   an attempt to defeat Summary Judgment that I believe is a sham

11   affidavit.  It's completely contrary to the -- you know,

12   literally, the hours of testimony where I asked Mr. Hawkins

13   about this issue every conceivable way.  And at no time did he

14   ever mention anything about taking the CDs off the company tax

15   records.

16          THE COURT:  Let me just ask you, there was no interest

17   reported by the corporation after --

18          MR. BARRANCO:  There was no interest reported after

19   2000 --

20          THE COURT:  No statements sent after 2002?

21          MR. BARRANCO:  No statements.  And that's my second

22   argument, briefly, Your Honor, is that Mr. Hawkins concedes that

23   he didn't get any statements, he didn't get any renewal notices,

24   he had no correspondence from PNC Bank.  So, you're talking

25   about, according to the records of PNC, they were -- these were
```

1   cashed back in 2002, but Mr. Hawkins says he hadn't received

2   anything for over a decade.

3           Now, I would contend, Your Honor, that in addition to

4   the fact that all of the undisputed facts, if you discount

5   Mr. Hawkins' sham affidavit, show that these CDs, according to

6   PNC's bank records, were cashed over a decade ago.  And,

7   frankly, Your Honor, had the suit been brought a long time ago,

8   we would have had additional records, because it might show

9   what the tell -- what would be a teller offset.

10          In other words, it would have shown that we would have

11  paid a check, perhaps, payable to Genesis or a transfer to some

12  other account or whatnot.  But we only keep records for seven

13  years and the bank is only required to keep records for seven

14  years, but by some miracle we had these microfiche that showed

15  those account statements, but we don't have the other statements

16  that would have shown where the money went.

17          So, we get criticized by the plaintiff, but the

18  plaintiff has no business -- the plaintiff has produced zero

19  business records going back that far anyway, because no one

20  keeps and is required to keep business records ten years ago.

21  But if you're not receiving renewal statements, you're not

22  receiving an interest statement, a 1099-INT, you're not

23  receiving anything from the bank for ten years.  Then you're on

24  notice that something --

25          First of all, I think the evidence shows undisputed

```
1   the CDs were cashed.  But as a secondary argument on
2   limitations, this has been over a decade and he's not receiving
3   any statements and I believe, at that point, a plaintiff who has
4   a CD on account and who isn't getting any kind of notifications
5   or communications from the bank is on notice that something
6   might be wrong, and something has happened to those CDs and has
7   an obligation to sue within three years.
8           And there's no allegation of fraudulent concealment.
9   And even under the Discovery Rule, the plaintiff was on notice
10  of having not received any communications from the bank for over
11  ten years, that there might be something wrong with the CDs and
12  could have conducted an investigation.
13          And the bank has been prejudiced by the delay, because
14  we didn't retain the records and the plaintiff hasn't retained
15  the records.  So I think it's a classic example of -- not that
16  prejudice is required for limitations, but it's a classic
17  example of why Statute of Limitations was created, because, you
18  know, the witnesses, the memories --
19          Is this Ms. Cutchember?
20          MS. CUTCHEMBER:  Yes.
21          MR. BARRANCO:  And you know, another thing is, so,
22  Mr. Hawkins testified in his deposition that my bookkeeper has
23  all the records of the corporation.  So, I subpoenaed
24  Ms. Cutchember and she informs -- and he testifies back in
25  January of this year, 2015, that she's our accountant.  And when
```

```
 1    I subpoena here for records, she calls me up and says, I haven't
 2    been employed by Genesis since July of 2013, over basically a
 3    year and a half.
 4            And so, there's this total misdirection on the part of
 5    the plaintiff here.  And, you know, that's really -- unless Your
 6    Honor has any questions, that's all I have to say.
 7            THE COURT:  All right.  Mr. Nelson -- Mr. Jones,
 8    rather.
 9            MR. JONES:  Thank you, Your Honor.  I just want to
10    make one correction and then I would like to address this in
11    parts; the $100,000 CD, the $10,000 CD and then I'll address
12    this Statute of Limitations argument.  But just one correction
13    that I believe is central to the case indicated that Mr. Hawkins
14    said that he didn't know about this, you have to talk to his
15    accountant.  And his accountant said, the accountant said the
16    CDs were cashed.  The accountant never said that.  He said that
17    the CDs were used to pay debt of the corporation.
18            THE COURT:  Is there some difference?
19            MR. JONES:  Yes, Your Honor.  The difference is, if
20    they were cashed by being redeemed in the bank, that's one
21    thing.  If they were used to pay the debt of the corporation,
22    that doesn't necessarily mean they were cashed.  It's not the
23    same thing.
24            THE COURT:  How do you use them without cashing them?
25            MR. JONES:  Your Honor, the 2010 tax return, in
```

1   addition to what the tax preparer gave to him showed that the

2   company was in debt to the CEO by, at least, $85,000 back when

3   the accountant gave the statement.  But in the 2010 in the tax

4   return, he lent another hundred thousand dollars to the bank.

5           So, before we got to the bank in 2014, the company was

6   already in debt to the CEO almost $200,000.  So the CDs were not

7   remaining on the books.  They were taken off the book because

8   they were in debt to the CEO way beyond that.

9           THE COURT:  I don't follow that.  Why are they taken

10  off the books?  That wouldn't be honest, would it?

11          MR. JONES:  No, Your Honor, it wasn't a act of

12  dishonesty.  It was the fact that they owed the CEO well in

13  excess of what the CDs were worth.  And, therefore, to leave

14  them on the books, Your Honor, would be dishonest because they

15  did not have that money for the corporation.

16          He is the CEO.  He controls, basically, makes

17  decisions about all funds and things of that nature.  So, they

18  were not shown on the books because they were in debt to the

19  CEO.  It's just that simply.  They weren't -- they didn't go

20  anywhere.  He just held them until there was a need.  That's the

21  only difference here.  There's nothing dishonest about that.

22          This is a company.  It wasn't reflected on the books

23  because they owed him way in excess of that.

24          THE COURT:  I don't follow that argument, candidly.  I

25  mean, they owe him -- whatever they owed, they also had an asset

1    of 110,000 plus.  Why aren't that showing that as an asset?

2              MR. JONES:  Because they -- because they didn't --

3    they didn't have that money anymore, Your Honor.  They owed him

4    more than what it was worth.

5              THE COURT:  Well, but an honest balance sheet would

6    show that CD as an asset and the liability to him as a

7    liability.  Otherwise, they're manufacturing misleading

8    financial statements, aren't they?

9              MR. JONES:   No.  Your Honor, it's difficult.  I

10   understand what you're saying, but it wasn't an act of

11   dishonesty.  It was an act of honesty.  They did not have

12   $110,000 worth of CD funds available for the corporation.

13             THE COURT:  Well, where were they?

14             MR. JONES:  The CEO held them.  He simply held them.

15   Do you understand, Your Honor?

16             THE COURT:  No, I don't understand that.  He's not

17   said that -- whoever -- look, the accounts were in the name of

18   the corporation.

19             MR. JONES:  Yes.

20             THE COURT:  There is no interest, no statements

21   received for ten plus years.

22             MR. JONES:  That's correct.

23             THE COURT:  There's no interest report in ten plus

24   years.  Mr. Hawkins didn't get it.  Why do you think that the

25   bank defaults on reporting this information?  Simply because

```
 1   they made -- you're saying that he was holding the CDs as

 2   opposed to the corporation.  I don't follow that.

 3             MR. JONES:  Your Honor, in essence, to take the

 4   position of what the bank is saying would be, in essence, to say

 5   because Mr. Hawkins and the company did not go and follow up

 6   with them, where are the records.  There was a transition from

 7   Calvert Trust & Company over to PNC.  They lost the records.

 8   Because Mr. Hawkins didn't go there and say, hey, I'm not

 9   getting statements, that doesn't mean he loses his $110,000 for

10   this corporation.

11             THE COURT:  No, the question was, was he on notice to

12   inquire.  Not did he -- suppose a hundred years later, he comes

13   across it.  You think there's no limit to a period in which he's

14   supposed to say, what's going on here?

15             MR. JONES:  There's no limit when there's an automatic

16   renewal provision.  When there's an automatic renewal provision,

17   Your Honor, he doesn't have to be worried about it.  It's an

18   automatic renewal and I have --

19             THE COURT:  You don't think -- you don't think that

20   there's some requirement to inquire that no interest statements

21   are being generated, no statements are being generated?

22             MR. JONES:  At some point, yes, Your Honor.

23             THE COURT:  Well, why wasn't he inquiring?

24             MR. JONES:  Your Honor, I can't answer why he didn't

25   inquire prior to going in to redeem them.  I can't answer that.
```

1   I simply know he has the original here that he never submitted

2   to them, never got the funds and he knew it was automatically

3   renewed.  So, he wasn't worried about his money in the bank

4   being automatically renewed.

5            THE COURT:  Do you have to submit a -- I'm not really

6   sure that your argument is very compelling.  Do you have to

7   submit a piece of paper to withdrawal money from a CD?

8            MR. JONES:  If you have an automatic renewal CD and

9   you bring this paper in to get your money back, if they don't

10   take the paper --

11           Now, I asked them, did they have any law or any

12   external rule or internal rule or regulation indicating that the

13   person can keep the original certificate, get the money and not

14   sign anything.  How can a bank give over $110,000 to somebody

15   and not get a signature or nothing and he's getting the original

16   --

17           THE COURT:  Well, what do you say about what your

18   accountant said?  Your accountant said that the money was drawn

19   down to pay debt.

20           MR. JONES:  The accountant said that it was, of

21   course, used to pay debt.  The debt was to the CEO.  That's why

22   it was taken offer the books was because it was for him.  He

23   didn't -- he didn't --  Your Honor, he didn't go to the bank to

24   --

25           THE COURT:  So, he got the money -- listen to what

1    you're saying.  I think you're saying, his debt gets paid down,

2    but now he wants to get the money that was used to pay it down.

3    Isn't that what you're saying?

4           MR. JONES:  No, what I'm saying is that, Your Honor

5    -- I guess the best way to explain this, this is a family

6    business.  With a family business, Your Honor, the CEO was using

7    his personal money on a regular basis.  And so, you may be

8    thinking about it in terms of a corporation where you don't have

9    the CEO who is a family -- employing his family.  It's a family

10   business.  Everybody is a relative and so, therefore, he did not

11   go and redeem the CDs.  He simply held them just in case in the

12   future the company would need the money, he would use the money

13   again.

14           He had been paying over $200,000 into the family

15   company.  So, the fact that he didn't go and redeem it is

16   consistent with his pattern of taking care of the family

17   business.  That's all.

18           I want to point something out, Your Honor, concerning

19   this $100,000 CD.  According to Maryland Commercial Code -- I

20   provided your clerk with a copy of the regulation.  Section

21   3104-J, it indicates that a Certificate of Deposit is

22   acknowledgment by the bank that a sum of money has been received

23   and a promise to pay that money back.

24           My client walked in there to get his CD redeemed and

25   they said, no, we don't have any records.  He said, okay, do

1    your research.  They did the research, came back and they

2    created something called a Certificate of Deposit Statement

3    indicating that it was redeemed at a certain time.

4            That document that they have submitted is invalid on

5    its face, Your Honor.  It is a fraudulent document, because the

6    date that it was redeemed is a date beyond the period of

7    redemption.  In other words, in their rush to try and justify

8    keeping my client's funds, they created a Certificate of Deposit

9    Statement with a date that it was redeemed and it is not within

10   a period in which you can redeem it.  So, that's invalid.

11           That's significant.  The reason why it's significant,

12   Your Honor, is because if he walks in there with the original

13   certificate saying, I'm the only one who can get the money.  I'm

14   the only -- I'm the CEO.  I sign all the checks.  I get all the

15   money, everything.  I'm the only one.  Here it is, I would like

16   to get the money.

17           They say, no.  Okay, where is my money?  Then they

18   give him a Certificate of Deposit Statement that is invalid on

19   its face.  They don't have a signature.  They don't have a video

20   of somebody getting the money.  According to Maryland Commercial

21   Code, they promised to return the money when they received it.

22           So, Your Honor, there's no issue of material fact, at

23   least, on $100,000 because there's no document showing it was

24   redeemed, no valid document, I should say.

25           THE COURT:  But what do you -- but why do you answer

1    -- how do you answer?  Ten years have gone by.  Why aren't you

2    concerned about limitations?

3             MR. JONES:  I'm not concerned about limitations

4    because it was an automatic renewal provision.  That takes it

5    out of the bar of the Statute of Limitations.  I gave you -- I

6    gave your clerk the case, Your Honor, and I actually quoted the

7    page and everything from the case that indicates clearly, Your

8    Honor, that any time you have a promise, if you make a promise

9    to pay, then that removes the bar of the Statute of Limitations.

10            So, he keeps talking about ten years.  It doesn't

11   matter if it's 100 years.  There's no bar when you got a

12   automatic renewal provision on a CD, which is the case in this

13   case.

14            Another thing I want to point out, Your Honor, is when

15   the plaintiff went to get the money and they said, okay, you

16   know, let's check.  And they came back, we don't have the money.

17   Where is my money?  Okay.  They gave him a Certificate of

18   Deposit Statement that was invalid on its face.

19            So, at this point here, in essence, they've violated

20   the Maryland Commercial Code.  They promised to return the

21   money.  They did not.  They did not have a signature of anybody

22   getting the money.  They did not have any valid statement

23   indicating the money was redeemed.  In essence, there was

24   nothing that the bank had and they had a obligation.

25            Your Honor, opposing counsel keeps saying something --

```
 1    they weren't sending documents.  That's their obligation.  You

 2    can't punish the plaintiff because they failed to keep records

 3    like they were supposed to.  They the ones had the automatic

 4    renewal provision.

 5              If you have an automatic renewal provision, it is your

 6    obligation to keep records on this.  How can you put this on the

 7    plaintiff shoulder and say, why didn't you inquire about it?

 8    You have an obligation to provide me with the records.  The fact

 9    that he may be busy or doing something, the company is busy and

10    things, and he don't get a chance to go over there.  They don't

11    need the money.  The company is healthy financially.  He's

12    healthy financially.  They're not thinking about the money.

13              But he did know, as he said in his deposition, I had a

14    automatic renewal provision.  I knew the money was there and I

15    knew the money was safe.  And I was watching the financial

16    programs on television, know what the interest was.  So, how is

17    he going to lose $100,000 simply because he didn't go and

18    inquire about something that he knew was safe with the bank?

19    That's concerning the $100,000 CD.  There's no genuine issue of

20    material fact, because there's no document showing it was

21    redeemed, no signature, anything.

22              Concerning the $10,000 CD, Your Honor, this is a

23    little more complicated because opposing counsel was kind of

24    wise in providing us with a Certificate of Deposit Statement

25    that was valid on its face.
```

1          This is a little more complicated, so I had to do some

2    discovery.  And I submitted some questions to opposing counsel

3    and he failed, Your Honor, to provide me any law, rule,

4    regulation, federal or commercial code, Maryland Commercial Code

5    or anything indicating that somebody can walk in there who is

6    not authorized to get money, get it, don't give you the

7    certificate, don't sign anything.

8          This is a corporation.  This is not individuals.  You

9    can't walk in and take a corporation's --

10          THE COURT:  I'm still concerned that your accountant

11    says the money was used.  You were making a distinction about

12    redeemed versus used.  The accountant said, that money in bank

13    was used to pay Mr. Hawkins.

14          MR. JONES:  That's the difference.

15          THE COURT:  And now, what are you saying?  That it

16    wasn't -- there's a difference between used and redeemed?  Are

17    you still insisting on that point?

18          MR. JONES:  The point I'm trying to make, Your

19    Honor -- I don't want this to be more complicated than it is to

20    my client and to me.  There's a difference between redeeming the

21    money from the bank and having the money available for you

22    because they owe you.  That's two totally different things.

23          The man didn't need the money.  He's well off.  So,

24    why would he redeem it if he doesn't need the money?  He just

25    held it just in case the company needed some help.  It's a

```
 1   family company.  He had been putting money in the company hand
 2   over fist, so he held the CD.  He didn't need to cash it.  He
 3   didn't need the money.
 4        The company was doing well.  He was financially
 5   established, so --
 6        THE COURT:  Are you saying, he should be the plaintiff
 7   here then, not the company?
 8        MR. JONES:  No, no, no.  I'm saying the company should
 9   be the plaintiff.  The fact that he didn't redeem the CDs, Your
10   Honor, that doesn't mean they lose the money.  If you sit the
11   CDs on your desk for ten years or however long it is, there's an
12   automatic renewal provision.  You know you're getting interest
13   on it.  You're looking at the interest on television.  You see
14   what it is and you just put it there because you don't need it.
15   You're financially healthy.
16        And then one day you need the money and you go and get
17   it, all of a sudden you lose your money simply because you
18   didn't inquire about it when you knew the money was there and it
19   was safe, and it was a automatic renewal provision year after
20   year.
21        THE COURT:  I want to follow your argument though.
22   Your accountant says, and your man says he didn't know what
23   happened, frankly, when he was deposed.  So whatever you're
24   saying now is a bit after the fact.
25        In any event, the money is used.  You're saying they
```

1   handed the CDs to Mr. Hawkins when they paid down his debt?   Is

2   that what they did?

3              MR. JONES:  Yes, the CDs --

4              THE COURT:  Is that what they did?  I mean, I'm asking

5   you.  Are you contending that they took the CDs -- the

6   certificates, not the CDs and they handed them to Mr. Hawkins

7   back in 2002 to satisfy a debt that they owed him?

8              MR. JONES:  For safekeeping to satisfy a debt --

9              THE COURT:  No, not for safekeeping, because

10  Mr. Hawkins is not the plaintiff here.  The bank -- sorry,

11  Genesis was paying down a debt by handing it to the creditor;

12  that is, Mr. Hawkins.

13             MR. JONES:  Yes.

14             THE COURT:  So that Genesis doesn't have a claim

15  anymore on the money.  Maybe Mr. Hawkins did at one time, but he

16  got his debt satisfied by handing over the CDs.  That's what I

17  think you're arguing.

18             MR. JONES:  Your Honor, I don't want to say it that --

19  that's really kind of simplistic.  What I'm trying to say, he's

20  the CEO of the company.  He concerned about the company

21  principally.  He's putting money in the company hand over fist.

22  Because they owe him that money, they handed him the CDs.

23             THE COURT:  Why doesn't he become the owner at that

24  point?

25             MR. JONES:  Because this is his company.

```
 1              THE COURT:  Well, you know, you get the benefit of

 2     being a corporation on the one hand.  And now you're saying,

 3     well, there really isn't any difference between the individual

 4     and the corporation here.  It's the corporation whose name is on

 5     the account, which is coming into court now and saying, give us

 6     the money; not give Mr. Hawkins the money.  Give us the money,

 7     they're saying.

 8              MR. JONES:  Mr. Hawkins as the CEO, Your Honor, his

 9     principal concern is his family company.  He represents the

10     company here.  He could have filed individual if he wanted to,

11     but he --

12              THE COURT:  Look, you're going to end up, though,

13     arguing that they paid him down with the CDs in 2002.  So,

14     that's the way they satisfied their debt, that he holds the

15     certificates -- and they used the CDs to do that.  And now he's

16     coming in again and he's going to get both the money that they

17     used to pay him down, plus the money that was in bank.

18              MR. JONES:  The money was never retrieved from the

19     bank for anything.  The money is sitting there.  He never

20     retrieved the money, Your Honor.

21              Only thing I can say to make this clearer --

22              THE COURT:  The bank doesn't know that though.  All

23     the bank knows is that Genesis isn't on the account anymore.

24     Somebody does something and transfers it to Mr. Hawkins.  That's

25     now, I think, what I understand you're saying.
```

1        The bank doesn't know what Genesis is doing, except

2   that they're taking the CDs and handing them over to

3   Mr. Hawkins.  Genesis has no claim on the money anymore.

4        MR. JONES:  Your Honor, what does that have to do with

5   the bank holding $110,000 that's never been redeemed.

6   Regardless of what he did within the internal operations of his

7   company, they have a $110,000 of his corporation money that

8   they've got sitting in a bank and would not return.  What

9   happened internally with the CEO and his company, and the way he

10  was concerned about his company.  He just held the CDs so he

11  could redeem it to help the company down the road.  He had been

12  putting money in there hand over fist.  What does that have to

13  do with the bank holding their money and not returning it?  They

14  have not returned this $110,000 CD.  They're trying to --

15       I call this a red herring, where he looks at my

16  client's tax records and say, well, you know, wasn't the wisest

17  way you handled your tax affairs.  That doesn't have anything to

18  do with them holding --

19       THE COURT:  He's not the plaintiff in this case.

20  Genesis is the plaintiff.

21       MR. JONES:  That's correct, Your Honor, and he is

22  representing Genesis.

23       THE COURT:  No, you're trying to treat him as the

24  owner of the -- he owns them today, doesn't he?  You're saying,

25  he owns the CDs today and yet, Genesis is the plaintiff.

```
 1              MR. JONES:  Genesis is the plaintiff and you -- when
 2    you say "own the CD" --
 3              THE COURT:  Well, whose got them?  Who had them?
 4              MR. JONES:  I have them right here.
 5              THE COURT:  No, who had them?  Mr. Hawkins had them.
 6              MR. JONES:  They were put in Mr. Hawkins' hands
 7    because he's the CEO to hold just in case the company --
 8              THE COURT:  You're acting like the corporation is
 9    something different -- is not something different from
10    Mr. Hawkins and it is, it is.
11              MR. JONES:  I understand, Your Honor, in theory that
12    Mr. Hawkins and the corporation are not one in the same, but
13    what I'm trying to relay to you, Your Honor, is we're spending a
14    lot of time talking about the interworkings of a corporation
15    that has nothing to do with them keeping $110,000 of this
16    corporation's funds.
17              Mr. Hawkins is here as the CEO on behalf of the
18    corporation to get the corporation's funds back.  Yes, they put
19    it in his hands because they owe him, but he never cashed them,
20    because he didn't really -- if he didn't need the money, he
21    didn't take the money and pocket it as if, this is paying my
22    debt off.  That's not the way he ran his family business.
23              He only was concerned about keeping the company
24    afloat, so he's acting on behalf of the corporation.  These are
25    corporate funds.
```

1          I understand what the Court is saying.  No, they're

2    Mr. Hawkins' funds.  They're not Mr. Hawkins' funds in the sense

3    that he took the funds, pocketed them, he went down the road.

4    The company's debt is no longer there.  They're not his funds in

5    that sense.  They put it in his hands because they knew they

6    were in debt to him, not for him to go and cash it, put it in

7    his pocket and walk down the road and say, these are my funds.

8    So they would be there if the family company needed these funds.

9          The family company needed the funds last year, so he

10   went in there to get the company's funds.  He has never treated

11   this as his own funds, even though they did owe him more than

12   the CDs were worth.

13         I'm trying to make the -- show the difference between

14   the way -- the interworkings of this corporation has nothing to

15   do with them keeping $110,000 of the corporation's funds.

16         It seems to me, Your Honor, the defendant has walked

17   in here and said, listen, even if we holding and keeping the

18   company's $110,000 funds, because Mr. Hawkins didn't do

19   something with his tax records he should have done, that wasn't

20   the wisest way he handled that, because they had this little

21   special family thing that they're doing inside their company to

22   be concerned about the financial well-being of the company,

23   because they used it -- because they owed him more than it was

24   worth, so they put it in his hands.  Therefore, we can keep a

25   corporation's $110,000.

1        Those are two totally different things.  Yes, Your

2   Honor, it wasn't the wisest way to handle your internal

3   financial tax matters, but that doesn't change the fact that

4   they have $110,000 and they have no record, valid record of him

5   redeeming it.  No signature of anybody going in there --

6        THE COURT:  They do have a record.  They have -- the

7   only written records they have produced have been those

8   generated records of the activity on the two CDs.

9        You don't have any written record, do you?

10       MR. JONES:  I don't have any written records, but I'm

11  saying the $100,000 written record is not valid.  It shows

12  redemption after the period to redeem.

13       THE COURT:  I don't buy that argument that it's not

14  valid.  Ten years later, it's the best that there is against

15  somebody who says, I don't know what happened, which is what

16  Mr. Hawkins said in January of this year.

17       MR. JONES:  He said that he got -- you have to talk to

18  his tax preparer.  He talked to the tax preparer.  The tax

19  preparer said, well, the CDs were basically used to pay down the

20  obligation of the company.

21       What I'm saying to you, Your Honor, is that when they

22  put -- when they acknowledge, Mr. Hawkins, you're the CEO.  We

23  understand we owe you more than what they're worth.  So what we

24  want to do is we, at least -- we just want to make sure you know

25  that we have this here for you if you need it.  He never took it

1    out and said --

2             THE COURT:  All right.  You've said that several

3    times.

4             Anything else new and different from what you said

5    heretofore?

6             MR. JONES:  Yes, Your Honor.  Concerning -- I want to

7    go to the $10,000 CD, because they have no records of the

8    $100,000 CD being redeemed.

9             On the $10,000 CD, they did provide a record.

10   However, they did not give me any information about the

11   employees who, who turned the funds over to whoever they claimed

12   redeemed it.  They have no information about the people who

13   interacted with the plaintiff.  They have no information about

14   the funds for the CDs.

15            The bank must keep records, Your Honor.

16            THE COURT:  Ten years?  You think they need to have

17   all that information ten years later?

18            MR. JONES:  If it's an automatic renewal provision.

19            THE COURT:  I don't follow that.  Why doesn't somebody

20   in your accountant's office know who took the money?  They say,

21   they had the money and used it.  You're making a distinction.

22   Who used the money?  They didn't tell the bank they were using

23   the money.  It went off Genesis' account, you say, and into

24   Mr. Hawkins' hands.

25            MR. JONES:  Right.

1              THE COURT:  And your client doesn't know.  I'm talking

2     about Genesis.  Who applied the money to the debt?  Who did it?

3              MR. JONES:  Genesis applied the money to --

4              THE COURT:  Who?  Who did it in Genesis?  Who?

5              MR. JONES:  The corporation.

6              THE COURT:  Who?

7              MR. JONES:  Mr. Hawkins.

8              THE COURT:  He did it himself.  In other words, he's

9     the guy who is in here now saying -- although he said he didn't

10    know on his deposition, but now he says, well, actually, I took

11    those CDs myself because the corporation, which I run, owed me

12    money.  Is that his argument?

13             MR. JONES:  His argument is, yes, I have the CDs.

14    That's what he said.

15             THE COURT:  No, that's not my question.  Listen very

16    carefully.  He was the individual on behalf of Genesis who took

17    the CDs and handed himself -- to himself as an individual.

18    Wasn't somebody else.

19             Somebody told the accountant it was being done,

20    because the accountant didn't carry it on the books after that.

21    Who was involved in that transaction for Genesis?

22             MR. JONES:  Your Honor, this is a corporation.  They

23    have a board.  They have people on the board.

24             THE COURT:  Who?

25             MR. JONES:  At the time, she was on the board.  They

```
 1    had other people on the board.  They had other family members on
 2    the board.  It's not just -- I don't want the Court to think
 3    that Mr. Hawkins was just going, do what he wanted to do.  This
 4    is a corporation --
 5              THE COURT:  But you're faulting the bank for not being
 6    able to tell you who the employees were and what they were doing
 7    ten years ago.  You're not giving me any better information from
 8    your side.
 9              MR. JONES:  What I'm saying, Your Honor, is the bank
10    has a right to keep $110,000 of my client's fund when it was an
11    automatic renewal provision in the CDs.  If it went on for 50
12    years, it's an automatic renewal provision.  They can't keep the
13    client -- they can't keep my client's funds.
14              Now, it's unfortunate, Your Honor, it's really
15    unfortunate that all the focus has gone to some internal
16    operations of this company and we're not focusing on the fact
17    that they have $110,000.  If we walk out of here --
18              THE COURT:  Well, I'm not sure what you understand.
19    You're saying about limitations, that somehow it was
20    automatically renewable.  And though nobody, including the
21    corporation or Mr. Hawkins, got interest statements, got bank
22    statements, got anything for ten years that somehow Statute of
23    Limitations doesn't matter, because it was, quote-unquote,
24    automatically renewable.  I don't follow that.
25              MR. JONES:  Your Honor, the law that I provided to
```

1   you, *Doughty versus Bayne*, in Maryland unlike most other states,

2   an acknowledgment of a subsisting debt is sufficient to remove

3   the bar of the statutes.  An automatic renewal provision in a CD

4   is acknowledgment of a subsisting debt.  They acknowledge that

5   they have my client's $110,000.  Therefore, there is no bar of

6   the Statute of Limitations.

7          THE COURT:  There's no acknowledgment, though, is

8   there here?

9          MR. JONES:  Yes, yes.  Look at the commercial law I

10  gave you, Your Honor.  Section 3104-J.  Turn it to the back, on

11  the back of it.

12         Certificate of Deposit Means an instrument containing

13  an acknowledgment by a bank that a sum of money has been

14  received by the bank and a promise by the bank to repay the sum.

15  That's a promise, Your Honor.  That Certificate of Deposit is a

16  promise with a automatic renewal provision that does not end.

17  If it sat there for a hundred years, it does not end.

18         The fact that my client didn't go and inquire about

19  it, what does that have to do with the fact they have it, it's

20  renewed and it's automatically renewed each year.  There's no

21  Statute of Limitations that apply here.  And I gave the Court

22  the case law.  I quoted the page where it states that.

23         Also, on page 364, "However, it has long been the

24  rule that an acknowledgment revised the remedy and avoids the

25  operation of the statute.  Statute of Limitations doesn't apply

1   here because it was an automatic renewal provision.

2           THE COURT:  All right.  Thank you, Mr. Jones.

3           Mr. Barranco, reply.

4           MR. BARRANCO:  Briefly, Your Honor, just a couple

5   points that counsel raised that I think Your Honor already

6   understands.

7           One, he makes a big deal out of the fact that the CDs,

8   according to our statements, weren't redeemed on the exact date

9   of an anniversary of six months or a year.  But if you look at

10  the dates, they actually are very close in time to the rollover

11  period.

12          But the larger point, Your Honor, as you know, is you

13  can -- the money is yours.  You can take a CD out any time.  You

14  may pay an interest penalty, but if I'm -- you know, usually,

15  there's a grace period anyway.  But putting that aside, let's

16  say in this case, the -- one of the CDs was taken out -- the

17  $10,000 CD was taken out on March 26, 1997, and it was redeemed

18  on March 29th, 2002.  So, in other words, it was within three

19  days of the renewal period.

20          But what would happen -- even if you took it out a

21  month later or two months later, you might suffer a slight

22  interest penalty, but the money is always yours.  You can

23  redeem --

24          Counsel actually suggested that PNC manufactured --

25  what I heard him say is, he said, PNC manufactured these

1    fraudulent records because we were so sloppy and in such a rush

2    to get these records that were, you know, on microfiche,

3    actually, that we manufactured them and we didn't get our dates

4    right.

5            Your Honor knows, you can go in and you can redeem a

6    CD any day.  And you may pay a slight penalty, but the money is

7    yours.  You can take it out.

8            So, and in any event, they're very close in time that

9    the 10,000 CD was within three days of the anniversary date.

10   So, again, it's completely consistent.  And then the $100,000 CD

11   was originally taken out on August 29th, 2001, and it was

12   redeemed on September 9th, 2002.  So, I don't know if it was a

13   Labor Day weekend, but again, you're talking about a matter of

14   days.

15           And, obviously, what happened here is they got the

16   renewal or they got a rollover notice from the bank, and they

17   decided to take the money out.  In other words, it's very close

18   to the anniversaries, but I would contend that even if it was

19   three months off of the anniversary, it would make no

20   difference, because you can withdraw a CD any time you want.

21           I mean, I think Your Honor knows that.  And I -- I

22   mean, I don't have evidence of that, but I think Your Honor can

23   take judicial notice, you know from your own experience that if

24   you take out a CD and it says it's six months, you can still

25   walk into the bank three months later and take it out.  It's

```
1    just that you may have an interest penalty.

2            So, the fact that the dates don't match up exactly on

3    the date -- in fact, I think the dates are very consistent with

4    the rollover date, so I think that's just a non-argument.

5            The second thing is this whole thing about the debt.

6    When you start, Your Honor -- and I say this -- you know, I

7    don't say this lightly, but when you start spinning lies, this

8    is what happens, because Mr. Hawkins comes up with this sham

9    affidavit where he says, I had debt of, you know, whatever

10   amount it was.  It was, like he said, a hundred and -- the

11   reason why I swapped my CDs, because the company owed me much

12   more than what the value of the CDs were.

13           And in his original affidavit, he had some figure.  I

14   think it was a hundred and 40 -- I don't remember, but it was

15   much more than $110,000.  Well, what happened was counsel got

16   this statement from the accountant and he didn't understand it.

17   And he added up -- if you look at that spreadsheet from the

18   accountant, it says, "Loans from Ron."  And it shows what the

19   ending balance was at the end of each tax year.

20           And so, for instance, at the end of one tax year, it

21   was 11,000 and change.  And the next year, it was close to

22   17,000.  And then the next year -- the highest it ever got was

23   close to 94,000 and then it went down to 25,000 and change.

24           And so, it never -- as it turns out, the debt that

25   Mr. Hawkins was owed from his company was never more than
```

```
1    $110,000, but they in their desperation to refute their own

2    accountant's statement, they made a mistake and they added up

3    all the loans from Ron as if it was like a new loan every year.

4    That was the ending --

5         If you match that up with what's in the tax returns,

6    that actually the ending balance at the end of every tax year.

7    So, Mr. Hawkins never had a debt that was in excess 110,000.

8    The most that he ever had was $93,983.  And then if you look at

9    footnote for the accountant, it says, fiscal year 2002, loss

10   of -- loss, not repayment; loss of $49,000, plus repayment to

11   shareholder for loan of $26,000.

12        And so -- because if you look at the end of that -- of

13   that tax year for 2002, they repaid Mr. -- they brought the

14   balance down from, from 25,000 -- roughly $26,000 down to zero.

15   So, really, the very tax statements and the accountant shows

16   that really what happened was at the end of the fiscal year for

17   2002, they paid a $26,000 loan off to Mr. Hawkins; not something

18   in excess of $110,000.

19        That's what happens when you spin lies is you make

20   mistakes and you get caught in more lies.  And I don't say that

21   lightly.

22        So, basically, what they're saying is that even though

23   the CDs were titled in the company's name, they are somehow

24   treated as his own, but we're not going to show that properly or

25   tax forms filed with the IRS.  It just --
```

1        And then, Mr. Hawkins' explanation for why this was

2    done, you know, beside the fact the numbers don't match up, none

3    of it makes any sense because he says, well, I wanted to pay

4    myself off, but -- but I never retitled -- I never went into PNC

5    and retitled them in my own name, because I wanted them to

6    secure the company's future.

7        So, in other words, he's saying, they were originally

8    titled in the company's name, but I wanted to pay myself, so I

9    kind of handed myself the CDs, but I left them titled in the

10   company's name, because the company would be more financially

11   secure.

12       I mean, it just -- the explanation by Mr. Hawkins

13   makes no sense and that's what happens when you spin a lie.  He

14   was asked about this in his deposition and he said, he knows

15   nothing about it.  And then when faced with the Summary Judgment

16   Motion, they come up with the sham affidavit.

17       And Your Honor is right on the money, that the reason

18   we have no records is because these were cashed back over a

19   decade ago and we would keep nothing.  And I do think that

20   limitations applies, because there's an obligation each year to

21   roll the CD over and pay interest.  And counsel says, oh, well,

22   Mr. Hawkins, he could see on TV, generally, what interest rates

23   are paying, as if he never had to check on these CDs.

24       He didn't know what PNC was paying versus Bank of

25   America or anything else.  You know, I think, you can't just --

1   I think Your Honor is correct that you can't just let CDs;

2   whether it's ten years, 15 years or 100 years, you can't put

3   them under your mattress -- well, you can't cash them in and

4   stick them under your mattress, and come back and say to a bank

5   20 years later, you don't have records that I cashed them.

6          Had he sued seven or eight years ago, we would have

7   had more records.  We have the records that we had.  We would

8   have had more records had he sued a long time ago.

9          THE COURT:  All right.  Final word, Mr. Jones, without

10  --

11         MR. JONES:  Your Honor, name calling does not change

12  the fact of what the law is in the state of Maryland.  To call

13  Mr. Hawkins a liar, that doesn't change the fact that the law

14  required that they return money -- they promised with the

15  certificate to return the money.

16         The fact that Mr. Hawkins didn't go in there and

17  inquire about it each year.  I don't know why he didn't do that.

18  I would have done it.  But the fact that he didn't do it does

19  not mean they can keep the corporation's money.

20         And so, opposing counsel is calling names, referring

21  to tax returns and doing everything but pointing out the fact

22  that they are the ones who have the money, they promised to keep

23  the money, to redeem it each year.  And now, they have no

24  signature, they don't have the certificate, they have no

25  evidence, they don't have witnesses who gave the money to,

1    whoever they claim got the money, because the money was never

2    redeemed.  It's just that simple.

3            So, talking about whatever he did with his taxes, I

4    don't know.  I'm not his tax preparer.  That may not have been

5    the wisest approach.  But what does it have to do with them

6    holding a corporation's $110,000?  I don't -- I don't see -- I

7    don't see -- Your Honor, I don't see how it has anything to do

8    with that.  And calling my client names and things, that doesn't

9    help anything.

10           The man put in his 2010 tax returns, he gave the

11   company another $100,000.  So he's talking about where he never

12   owed more than $110,000, what the CDs were worth.  He doesn't

13   have a clue.  Mr. Hawkins put in -- arguably, probably put in

14   close to a million dollars in this family business.

15           So, the fact that he ain't go run out to the bank and

16   cash the CDs because he didn't need the money does not mean that

17   they can keep the corporation's money.

18           Another thing, Your Honor.  They owe my client way

19   more than the interest on those statements.  They owe my client

20   interest up to this very day, because of the automatic renewal

21   provision.  So, on a hundred thousand dollars, they owe my

22   client another $10,000 in addition to what's on that

23   certificate.  And on the $10,000 CD, they owe my client another

24   almost $3,000.

25           Even to this days, if automatic renewal.  What are

```
 1    they taking about?  They are the ones that -- they gave the

 2    terms of the CD.  It doesn't say in the terms, Your Honor, and

 3    it's in my complaint, as well as my Motion for Summary Judgment,

 4    in the terms it does not say you must come in and inquire about

 5    your interest each year.  You must, at least, call and check on

 6    it.  That's not in the terms.

 7             The terms state, it's going to automatically renewed.

 8    There's no requirements of my client to go and talk to the bank

 9    about his money that he's not he deemed.  And they have no

10    records showing, no signature showing anybody redeemed it,

11    because it was not redeemed.

12             That is a nice argument he's making about my client

13    not -- using the grace of wisdom with this taxes, but it has

14    nothing to do with them keeping the money, having no signature

15    or any evidence whatsoever that anybody redeemed that money

16    because it was never redeemed.

17             THE COURT:  All right.  Thank you, sir.  Have a seat.

18             In this case, Genesis Office Systems, Incorporated has

19    sued PNC Bank in a single count of conversion.  The matter is

20    before the Court on the parties' Cross Motions for Summary

21    Judgment.

22             In this case, the background is that the Genesis

23    Corporation is a family owned business that services and sales

24    business machines, and the CEO is Ronald Hawkins.

25             The evidence shows that in 1997, Genesis obtained a
```

1    Certificate of Deposit from a bank, which eventually became PNC

2    Bank for $10,000 and in 2001, a CD in the amount of $100,000.

3    Genesis acquired the CDs from Calvert Bank & Trust, which was

4    the original depository and PNC then acquired the banks.  Sorry,

5    Genesis acquired the CDs from Calvert Bank and PNC then acquired

6    the banks.

7            Hawkins is the only person he says alleged to --

8    authorized to redeem the CDs and he was holding the CDs, and has

9    been holding them from 2002, more or less, forward.  This suit

10   was filed in -- removed from the Circuit Court for Calvert

11   County on August 22nd, 2014.  So, filed sometime in 2014 in the

12   state court.

13           The suggestion by Genesis is that it simply, after

14   considering this matter on Summary Judgment, despite what they

15   plead, that Mr. Hawkins was the one who was actually possessing

16   the CDs after 2002 and that he then sought in May, 2014, to

17   redeem them.  That is, some 12 years later.

18           He never received any -- after the alleged redemption

19   that the bank says occurred in 2002, neither Genesis nor the

20   bank received any bank statements from the bank, received any

21   interest statements from the bank, which would be reportable on

22   income tax, nothing at all.

23           Genesis relies on the fact that Mr. Hawkins, nor

24   Genesis had any obligation to pursue any of this information and

25   had no bearing whatsoever on the transaction.  And what, what

1    Genesis says now, although Mr. Hawkins didn't know the answer

2    notwithstanding the fact that he was the key operative at

3    Genesis, but they say now is that they handed the money -- this

4    is Genesis -- to Mr. Hawkins in satisfaction of debts that they

5    owed him.  But no information passes between the bank and either

6    Mr. Hawkins or Genesis after 2002.

7         And the record shows that there were debts that were

8    owed Mr. Hawkins back in '88, '99, 2000, 2001 that were

9    essentially paid off.  And these are statements from the

10   accountant after Mr. Hawkins said, I don't really know.  You

11   have to talk to the accountant about what happened with the

12   money.

13        What is clear is that the Genesis -- Genesis used

14   the -- at best, this money to hand over -- the CD's to hand over

15   to Mr. Hawkins in satisfaction of debts in some amount.  It's

16   not clear exactly whether it was the full amount that was owing.

17   But the records, including the tax records from Genesis, show

18   that there was $2004 in interest income in 2001 and reported

19   cash on hand of $141,123, including the CDs at Calvert Bank.

20   And for tax year 2002, there was zero interest income and the

21   cash on hand was $23,421, a reduction from $141,123 at the

22   beginning of the tax year evidencing no CD or CDs at Calvert

23   Bank.

24        So, it's clear that Genesis as of 2002 had taken

25   whatever was in the CDs and transferred it, at best, to

1   Mr. Hawkins outside the corporation.  And the bank's records

2   verify that the CDs were redeemed in 2002 in the full amount of

3   the CDs.  And again, no interest statements followed after,

4   which would by applicable to CDs.  No account statements were

5   furnished after, which is ordinarily done in connection with

6   CDs.  And so, that's where the situation lies as the matter is

7   resolved on Summary Judgment.

8          The issue is whether there is a genuine issue of

9   material fact.  And what is certainly not in dispute is that

10  Genesis, which is the plaintiff in this case, took the money and

11  distinction is offered by plaintiff's counsel that there's a

12  difference between using and redeeming, but Genesis, which is

13  the plaintiff, took the money and used it to whatever; draw down

14  debts or whatever it did.  Genesis no longer had a claim on the

15  property, whatever it did with the monies at that point.

16         And that really is the end of it as far as any claim

17  that Genesis has got.  This doesn't go on indefinitely.  Anybody

18  can withdraw money from a Certificate of Deposit either on the

19  anniversary date of its renewal or within any period thereafter

20  paying some slight penalty.  So, the mere fact it was a CD

21  doesn't mean it couldn't have been withdrawn and used as it was

22  here.

23         Now, who exactly redeemed it really gets us into the

24  next question, which is what their limitations apply here.  No

25  more than ten years, 12 years, as I see it, roughly, have passed

```
 1   between the period of time when the bank says the CDs were
 2   redeemed and Mr. Hawkins comes in to redeem them.  And it's as
 3   if it doesn't matter, according to plaintiff, that 12 years
 4   pass, if you go on for infinity.  That's just not the law.
 5   That's just not true.
 6          There's not an acknowledgment that a CD continues in
 7   effect when there's evidence that it was withdrawn.  Twelve
 8   years pass and the bank has, miraculously, in my view come up
 9   with, at least, an account statement showing that the CDs
10   terminated in 2012.  The plaintiffs really offered nothing else.
11   In fact, Mr. Hawkins didn't know when deposed in January of 2015
12   what had happened.  And against that, we are urged to find a
13   genuine issue of material fact.
14          But in ten or 12 years, witnesses go away, documents
15   go away, memories fade.  That's what limitations is all about.
16   There clearly was either on the part -- certainly on the part of
17   Mr. Hawkins, because Genesis was out of the picture and
18   knowingly so as of 2002.
19          And Mr. Hawkins, insofar as he would be a claimant
20   today and he is different from the corporation, he can't let 12
21   years go by and never look into whether he's got a CD.  Never
22   look into whether he's getting account statements.  Never look
23   into whether he's got an income tax due.  He, obviously, would
24   have 12 years of income tax due on the accounts, if in fact he
25   was still the owner of them.  Somebody would.  Genesis might,
```

1   but nobody has any evidence of even getting a report of an

2   interest statement.  You don't get interest tax free on a CD.

3   You pay interest on CDs every year.  They earn interest.  That's

4   what they do.

5          So that's the kind of a situation on the plaintiff's

6   side.  I don't have to call the -- this -- the plaintiff's case

7   dishonest, but it's totally misbegotten.  It, frankly, ignores

8   entirely the rationale for the application of the Statute of

9   Limitations where there just isn't a lot of clear evidence to

10  try and generate.

11         And here's the final point, really, of all this.  Even

12  if 12 years ago Mr. Hawkins had this claim, the fact of the

13  matter is that he waited 12 years to try and assert it would

14  also trigger limitations, because he wasn't on -- he was on

15  inquiry, certainly within some time reasonably thereafter to

16  inquire as to the status of the CD.  He could not wait 12 years.

17  He could not wait an infinity, as counsel suggests.  He had some

18  obligation to do it.

19         So even if he had a valid claim at one point, he lost

20  it.  He lost it and that's what limitations is about.  You could

21  have a valid claim before limitations.  You could be injured in

22  an automobile accident.  It could be 100 percent the fault of

23  the driver of the other automobile, but if you don't sue within

24  three years, you're out of luck, even though you had a valid

25  claim.

```
 1              And the same is true with a breach of contract, which

 2    is frankly all this is.  This is a contract case.  And there was

 3    an opportunity when one party said, we don't have a contract

 4    anymore and the other one said, well, we didn't have to do

 5    anything.  Not so.

 6              So, it's clear to me that the defendant is entitled to

 7    Summary Judgment in this case and the Court will enter Summary

 8    Judgment in favor of the defendant and deny the motion of the

 9    plaintiff for Summary Judgment.  And that will be for the

10    reasons stated on the record.

11              Thank you, counsel.

12              MR. JONES:  Thank you, Your Honor.

13              MR. BARRANCO:  Thank you, Your Honor.

14         (Recess at 11:05 a.m.)

15

16                             *    *    *

17

18

19

20

21

22

23

24

25
```

1                    CERTIFICATE OF COURT REPORTER

2        I, Linda C. Marshall, certify that the foregoing is a

3   correct transcript from the record of proceedings in the

4   above-entitled matter.

5

6

7              /s/
               _____
8              Linda C. Marshall, RPR
               Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$10,000 [11]  3/9 3/14 3/21 9/11 17/22
 26/7 26/9 30/17 36/22 36/23 38/2
$100,000 [12]  3/10 3/21 9/11 14/19
 15/23 17/17 17/19 25/11 26/8 31/10
 36/11 38/2
$103,998.60 [1]  3/11
$110,000 [20]  4/18 11/12 12/9 13/14
 22/5 22/7 22/14 23/15 24/15 24/18
 24/25 25/4 28/10 28/17 29/5 32/15 33/1
 33/18 36/6 36/12
$12,482.92 [1]  3/9
$141,123 [2]  39/19 39/21
$200,000 [1]  10/6 14/14
$2004 [1]  39/18
$23,421 [1]  39/21
$26,000 [3]  33/11 33/14 33/17
$3,000 [1]  36/24
$49,000 [1]  33/10
$85,000 [1]  10/2
$93,983 [1]  33/8

**'**

'88 [1]  39/8
'99 [1]  39/8

**/**

/s [1]  44/7

**1**

10,000 [1]  31/9
100 [2]  16/11 35/2
100 percent [1]  42/22
1099-INT [1]  7/22
10:05 [1]  1/9
11,000 [1]  32/21
110,000 [2]  11/1 33/7
11:05 [1]  43/14
12 [9]  38/17 40/25 41/3 41/14 41/20
 41/24 42/12 42/13 42/16
14-2704 [1]  1/5 2/3
141,000 [1]  4/16
15 [2]  1/8 35/2
17,000 [1]  32/22
1701 [1]  1/15
1997 [3]  2/19 30/17 37/25

**2**

20 [1]  35/5
2000 [2]  6/19 39/8
2001 [5]  2/19 31/11 38/2 39/8 39/18
2002 [22]  3/10 3/11 3/21 3/22 4/13 6/20
 7/1 20/7 21/13 30/18 31/12 33/9 33/13
 33/17 38/9 38/16 38/19 39/6 39/20
 39/24 40/2 41/18
2010 [3]  9/25 10/3 36/10
2012 [1]  41/10
2013 [1]  9/2
2014 [4]  10/5 38/11 38/11 38/16
2015 [4]  1/8 6/3 8/25 41/11
21204 [1]  1/19
21217 [1]  1/16
22nd [1]  38/11
23,421 [1]  4/17
25,000 [2]  32/23 33/14
26 [1]  30/17
2704 [2]  1/5 2/3

**29th** [4]  3/10 3/21 30/18 31/11

**3**

301 [1]  1/23
3104-J [2]  14/21 29/10
3229 [1]  1/23
344-3229 [1]  1/23
364 [1]  29/23

**4**

4.6 [1]  3/15
40 [1]  32/14
410-462-5800 [1]  1/16
410-494-7777 [1]  1/20

**5**

50 [1]  28/11
500 [1]  1/19
5800 [1]  1/16

**7**

7777 [1]  1/20

**9**

94,000 [1]  32/23
9th [3]  3/11 3/22 31/12

**A**

a.m [2]  1/9 43/14
able [1]  28/6
about [46]
above [1]  44/4
above-entitled [1]  44/4
accident [1]  42/22
according [7]  2/19 6/25 7/5 14/19 15/20
 30/8 41/3
account [9]  7/12 7/15 8/4 21/5 21/23
 26/23 40/4 41/9 41/22
accountant [29]  4/1 4/2 4/12 5/2 5/14
 5/23 6/5 6/7 6/7 8/25 9/15 9/15 9/15
 9/16 10/3 13/18 13/18 13/20 18/10
 18/12 19/22 27/19 27/20 32/16 32/18
 33/9 33/15 39/10 39/11
accountant's [2]  26/20 33/2
accounting [1]  5/21
accounts [2]  11/17 41/24
acknowledge [2]  25/22 29/4
acknowledgment [7]  14/22 29/2 29/4
 29/7 29/13 29/24 41/6
acquired [4]  38/3 38/4 38/5 38/5
across [1]  12/13
act [3]  10/11 11/10 11/11
acting [2]  23/8 23/24
Action [2]  1/4 2/3
activity [1]  25/8
actually [8]  2/23 16/6 27/10 30/10 30/24
 31/3 33/6 38/15
added [2]  32/17 33/2
addition [3]  7/3 10/1 36/22
additional [1]  7/8
address [2]  9/10 9/11
affairs [1]  22/17
affidavit [8]  4/9 4/24 6/9 6/11 7/5 32/9
 32/13 34/16
afloat [1]  23/24
after [11]  6/6 6/17 6/18 6/20 19/19 19/24
 25/12 27/20 38/13 38/16 38/18 39/6
 39/10 40/3 40/5

again [5]  14/13 21/16 31/10 31/13 40/3
against [2]  25/14 41/12
ago [10]  2/21 3/4 7/6 7/7 7/20 28/7
 34/19 35/6 35/8 42/12
AIDED [1]  1/24
ain't [1]  36/15
all [25]  2/6 2/12 2/24 7/4 7/25 8/23 9/6
 9/7 10/17 14/17 15/14 15/14 19/17
 21/22 26/2 26/17 28/15 30/2 33/3 35/9
 37/17 38/22 41/15 42/11 43/2
allegation [1]  8/8
alleged [2]  38/7 38/18
almost [2]  10/6 36/24
already [2]  10/6 30/5
also [4]  4/3 10/25 29/23 42/14
although [2]  27/9 39/1
always [1]  30/22
America [1]  34/25
amount [7]  3/9 3/11 32/10 38/2 39/15
 39/16 40/2
amounts [2]  3/13 3/18
anniversaries [1]  31/18
anniversary [4]  30/9 31/9 31/19 40/19
another [8]  2/19 8/21 10/4 16/14 36/11
 36/18 36/22 36/23
answer [6]  5/22 12/24 12/25 15/25 16/1
 39/1
any [33]  5/8 6/23 6/23 8/3 8/4 8/10 9/6
 13/11 13/11 14/25 16/8 16/22 18/3
 19/25 21/3 25/9 25/10 26/10 28/7 30/13
 31/6 31/8 31/20 34/3 37/15 38/18 38/20
 38/20 38/24 38/24 40/16 40/19 42/1
anybody [5]  16/21 25/5 37/10 37/15
 40/17
anymore [7]  4/11 5/10 11/3 20/15 21/23
 22/3 43/4
anything [16]  3/25 6/14 7/2 7/23 13/14
 17/21 18/5 18/7 21/19 22/17 26/4 28/22
 34/25 36/7 36/9 43/5
anyway [2]  7/19 30/15
anywhere [1]  10/20
APPEARANCES [1]  1/13
appears [1]  4/25
applicable [1]  40/4
application [1]  42/8
applied [2]  27/2 27/3
applies [1]  34/20
apply [3]  29/21 29/25 40/24
approach [1]  36/5
are [27]  3/13 3/18 4/11 4/25 5/20 5/21
 10/9 12/6 12/21 12/21 18/15 18/16 19/6
 20/5 23/12 23/24 24/7 25/1 30/10 32/3
 33/23 34/23 35/22 36/25 37/1 39/9
 41/12
aren't [3]  11/1 11/8 16/1
arguably [1]  36/13
arguing [2]  20/17 21/13
argument [11]  6/22 8/1 9/12 10/24 13/6
 19/21 25/13 27/12 27/13 32/4 37/12
as [35]  3/12 5/3 5/3 5/9 5/10 8/1 11/1
 11/6 11/6 12/1 17/13 21/8 22/23 23/17
 23/21 24/11 27/17 30/12 32/24 33/3
 33/24 34/23 37/3 37/3 39/24 40/6 40/16
 40/16 40/21 40/25 41/2 41/18 41/19
 42/16 42/17
ascertain [1]  3/20
aside [1]  30/15
ask [3]  5/24 6/5 6/16

**A**

asked [6]  5/6 5/19 6/6 6/12 13/11 34/14
asking [1]  20/4
assert [1]  42/13
asset [5]  4/21 5/3 10/25 11/1 11/6
ASSOCIATION [2]  1/7 2/4
at [41]  3/23 4/3 4/7 4/12 4/16 4/17 6/1
6/13 8/3 10/2 12/22 15/3 15/22 16/9
19/13 20/15 20/23 22/15 25/24 27/25
29/9 30/9 32/17 32/19 32/20 33/6 33/8
33/12 33/16 37/5 38/22 39/2 39/14
39/19 39/21 39/22 39/25 40/15 41/9
42/19 43/14
attached [1]  4/11
attempt [1]  6/10
August [2]  31/11 38/11
August 22nd [1]  38/11
August 29th [1]  31/11
authorized [2]  18/6 38/8
automatic [19]  12/15 12/16 12/18 13/8
16/4 16/12 17/3 17/5 17/14 19/12 19/19
26/18 28/11 28/12 29/3 29/16 30/1
36/20 36/25
automatically [6]  13/2 13/4 28/20 28/24
29/20 37/7
automobile [2]  42/22 42/23
available [2]  11/12 18/21
Avenue [1]  1/15
avoids [1]  29/24
away [2]  41/14 41/15

**B**

back [18]  2/19 4/13 5/14 7/1 7/19 8/24
10/2 13/9 14/23 15/1 16/16 20/7 23/18
29/10 29/11 34/18 35/4 39/8
background [1]  37/22
balance [5]  5/15 11/5 32/19 33/6 33/14
Baltimore [1]  1/16
bank [67]
bank's [1]  40/1
banks [2]  38/4 38/6
bar [5]  16/5 16/9 16/11 29/3 29/5
BARRANCO [4]  1/18 2/11 2/12 30/3
basically [5]  5/19 9/2 10/16 25/19 33/22
basis [1]  14/7
Bayne [2]  39/1
be [20]  7/9 8/6 8/11 10/10 10/14 12/4
12/17 14/7 17/9 18/19 19/6 19/9 24/8
24/22 34/10 38/21 41/19 42/21 42/22
43/9
bearing [1]  38/25
became [1]  38/1
because [61]
become [1]  20/23
been [16]  4/21 7/7 8/2 8/13 9/2 14/14
14/22 19/1 22/5 22/11 25/7 29/13 29/23
36/4 38/9 40/21
before [6]  1/11 2/2 2/5 10/5 37/20 42/21
begin [1]  2/12
beginning [2]  4/16 39/22
behalf [4]  2/11 23/17 23/24 27/16
being [9]  9/20 12/21 12/21 13/4 21/2
24/22 26/8 27/19 28/5
believe [3]  6/10 8/3 9/13
benefit [1]  21/1
beside [1]  34/2
best [4]  14/5 25/14 39/14 39/25

better [1]  28/7
between [7]  18/16 18/20 21/3 24/13
39/5 40/12 41/1
beyond [2]  10/8 15/6
big [1]  30/7
bit [5]  16/9 19/24
board [5]  27/23 27/23 27/25 28/1 28/2
book [1]  10/7
bookkeeper [1]  8/22
books [7]  10/7 10/10 10/14 10/18 10/22
13/22 27/20
both [1]  21/16
branch [1]  3/1
breach [1]  43/1
briefly [2]  6/22 30/4
bring [1]  13/9
brought [2]  7/7 33/13
business [12]  3/8 7/18 7/19 7/20 14/6
14/6 14/10 14/17 23/22 36/14 37/23
37/24
busy [2]  17/9 17/9
but [58]
buy [1]  25/13

**C**

call [4]  22/15 35/12 37/5 42/6
called [1]  15/2
calling [3]  35/11 35/20 36/8
calls [1]  9/1
Calvert [6]  12/7 38/3 38/5 38/10 39/19
39/22
came [2]  15/1 16/16
can [25]  3/12 3/19 3/20 4/24 5/1 13/13
13/14 15/10 15/13 17/6 18/5 21/21
24/24 30/13 30/13 30/22 31/5 31/5 31/7
31/20 31/22 31/24 35/19 36/17 40/18
can't [11]  12/24 12/25 17/2 18/9 28/12
28/13 34/25 35/1 35/2 35/3 41/20
candidly [1]  10/24
care [1]  14/16
carefully [1]  37/16
carry [1]  27/20
case [19]  2/17 3/24 9/13 14/11 16/6
16/7 16/12 16/13 18/25 22/19 23/7
29/22 30/16 37/18 37/22 40/10 42/6
42/3 43/7
cash [7]  4/15 19/2 24/6 35/3 36/16
39/19 39/21
cashed [11]  3/4 6/8 7/1 7/6 8/1 9/16
9/20 9/22 23/19 34/18 35/5
cashing [1]  9/24
caught [1]  33/20
CD [41]  3/9 3/10 3/14 3/21 3/21 8/4 9/11
9/11 11/6 11/12 13/7 13/8 14/19 14/24
16/12 17/19 17/22 19/2 21/4 24/6 26/7
26/8 26/9 29/3 30/13 30/17 31/6 31/9
31/10 31/20 31/24 34/21 36/23 37/2
38/2 39/22 40/20 41/6 41/21 42/2 42/15
CD's [1]  39/14
CDs [69]
center [1]  2/15
central [1]  9/13
CEO [18]  10/2 10/6 10/8 10/12 10/16
10/19 11/14 13/24 14/4 14/9 15/14
20/20 21/8 22/9 23/7 23/17 25/22 37/24
certain [1]  16/3
certainly [3]  40/9 41/16 42/15
certificate [17]  13/13 14/21 15/2 15/8

15/13 15/18 16/17 17/24 18/7 29/12
29/15 35/15 35/24 36/23 38/1 40/18
44/1
certificates [2]  20/6 21/15
certify [1]  44/2
chance [1]  17/10
change [5]  25/3 32/21 32/23 35/11
35/13
check [4]  7/11 16/16 34/23 37/5
checks [1]  15/14
Circuit [1]  38/10
Civil [2]  2/3
claim [10]  2/17 20/14 22/3 36/1 40/14
40/16 42/12 42/19 42/21 42/25
claimant [1]  41/19
claimed [1]  26/11
classic [2]  8/15 8/16
clear [5]  39/13 39/16 39/24 42/9 43/6
clearer [1]  21/21
clearly [2]  16/7 41/16
clerk [2]  14/20 16/6
client [12]  14/24 18/20 27/1 28/13 29/18
36/8 36/18 36/19 36/22 36/23 37/8
37/12
client's [5]  15/8 22/16 28/10 28/13 29/5
close [6]  30/10 31/8 31/17 32/21 32/23
36/14
clue [1]  36/13
code [5]  14/19 15/21 16/20 18/4 18/4
come [4]  34/16 35/4 37/4 41/8
comes [5]  3/17 6/9 12/12 32/8 41/2
coming [2]  21/5 21/16
commercial [6]  14/19 15/20 16/20 18/4
18/4 29/9
communications [2]  8/5 8/10
company [42]  4/21 5/3 5/9 6/1 6/14 10/2
10/5 10/22 12/5 12/7 14/12 14/15 17/9
17/11 18/25 19/1 19/1 19/4 19/7 19/8
20/20 20/20 20/21 20/25 21/9 21/10
22/7 22/9 22/10 22/11 23/7 23/23 24/8
24/9 24/21 24/22 25/20 28/16 32/11
32/25 34/10 36/11
company's [8]  5/11 24/4 24/10 24/18
33/23 34/6 34/8 34/10
compelling [1]  13/6
complaint [1]  37/3
completely [3]  3/13 6/11 31/10
complicated [3]  17/23 18/1 18/19
COMPUTER [1]  1/24
COMPUTER-AIDED [1]  1/24
concealment [1]  8/8
concedes [1]  6/22
conceivable [1]  6/13
concern [1]  21/9
concerned [7]  16/2 16/3 18/10 20/20
22/10 23/23 24/22
concerning [4]  14/18 17/19 17/22 26/6
conducted [1]  8/12
connection [1]  40/5
considering [1]  38/14
consistent [4]  3/13 14/16 31/10 32/3
containing [1]  29/12
contend [3]  6/1 7/3 31/18
contending [1]  20/5
continues [1]  41/6
contract [3]  43/1 43/2 43/3
contrary [1]  6/11
controls [1]  10/16

## C

conversion [1]  37/19
copy [1]  14/20
corporate [4]  4/4 4/25 6/8 23/25
corporation [29]  6/17 8/23 9/17 9/21
10/15 11/12 11/18 12/2 12/10 14/8 18/8
21/2 21/4 21/4 22/7 23/8 23/12 23/14
23/18 23/24 24/14 27/5 27/11 27/22
28/4 28/21 37/23 40/1 41/20
corporation's [8]  18/9 23/16 23/18 24/15
24/25 35/19 36/6 36/17
correct [5]  3/18 11/22 22/21 35/1 44/3
correction [2]  9/10 9/12
correspondence [1]  6/24
could [9]  8/12 21/10 22/11 34/22 42/16
42/17 42/20 42/21 42/22
couldn't [1]  40/21
counsel [13]  2/6 2/9 16/25 17/23 18/2
30/5 30/24 32/15 34/21 35/20 40/11
42/17 43/11
count [1]  37/19
County [1]  38/11
couple [2]  2/21 30/4
course [1]  13/21
court [14]  1/1 1/23 2/2 2/5 21/5 24/1
28/2 29/21 37/20 38/10 38/12 43/7 44/1
44/8
cover [1]  4/4
created [3]  8/17 15/2 15/8
creditor [1]  20/11
criticized [1]  7/17
Cross [1]  37/20
Cutchemher [3]  8/19 8/20 8/24

## D

date [8]  15/6 15/6 15/9 30/8 31/9 32/3
32/4 40/19
dates [5]  3/18 30/10 31/3 32/2 32/3
day [4]  19/16 31/6 31/13 36/20
days [4]  30/19 31/9 31/14 36/25
deal [1]  30/7
debt [26]  9/17 9/21 10/2 10/6 10/8 10/18
13/19 13/21 13/21 14/1 20/1 20/7 20/8
20/11 20/16 21/14 23/22 24/4 24/6 27/2
29/2 29/4 32/5 32/9 32/24 33/9
debts [4]  39/4 39/7 39/15 40/14
decade [5]  3/4 7/2 7/6 8/2 34/19
decided [1]  31/17
decisions [1]  10/17
deemed [1]  37/9
defaults [1]  11/25
defeat [1]  6/10
defendant [7]  1/8 1/18 2/7 2/11 24/16
43/6 43/8
delay [1]  8/13
demonstrate [1]  3/18
deny [1]  43/8
deposed [4]  3/23 5/5 19/23 41/11
deposing [1]  6/3
Deposit [10]  14/21 15/2 15/8 15/18
16/18 17/24 29/12 29/15 38/1 40/18
deposition [5]  6/6 8/22 17/13 27/10
34/14
depository [1]  38/4
desk [1]  19/11
desperation [1]  33/1
despite [1]  38/14

## did [27]  5/8 6/6 6/13 10/15 11/11 12/5
12/12 13/11 14/10 15/1 16/21 16/21
16/22 17/13 20/2 20/4 20/15 22/6 24/11
26/9 26/10 27/2 27/4 27/8 36/3 40/14
40/15
didn't [40]  6/23 6/23 8/14 9/14 10/19
11/2 11/3 11/24 12/8 12/24 13/23 13/23
13/23 14/15 17/7 17/17 18/23 19/2 19/3
19/9 19/18 19/22 23/20 23/20 23/21
24/18 26/22 27/23 29/17 29/18 31/3
32/16 34/24 35/16 35/17 35/18 36/16
39/1 41/11 43/4
difference [10]  9/18 9/19 10/21 18/14
18/16 18/20 21/3 24/13 31/20 40/12
different [6]  18/22 23/9 23/9 25/1 26/4
41/20
difficult [1]  11/9
discount [1]  7/4
discovered [2]  2/21
discovery [2]  8/9 18/2
dishonest [3]  10/14 10/21 42/7
dishonesty [2]  10/12 11/11
dispute [1]  40/9
distinction [3]  18/11 26/21 40/11
DISTRICT [3]  1/1 1/1 1/12
DIVISION [1]  1/2
do [34]  5/17 9/24 11/15 11/24 13/5 13/6
13/17 14/25 15/25 15/25 16/14 17/22
21/15 22/4 22/13 22/18 23/15 24/15
24/18 25/6 25/9 25/24 28/3 28/3 29/19
34/19 35/17 35/18 36/5 36/7 37/14 42/4
42/18 43/4
document [15]  15/4 15/5 15/23 15/24
17/20
documents [2]  17/1 41/14
does [12]  2/15 21/24 22/4 22/12 29/16
29/17 29/19 35/11 35/18 36/5 36/16
37/4
doesn't [25]  3/19 9/22 12/9 12/17 16/10
18/24 19/10 20/14 20/23 21/22 22/1
22/17 22/24 25/3 26/19 27/1 28/23
29/25 35/13 36/8 36/12 37/2 40/17
40/21 41/3
doing [6]  17/9 19/4 22/1 24/21 28/6
35/21
dollars [1]  10/4 36/14 36/21
don't [55]
done [5]  24/19 27/19 34/2 35/18 40/5
Doughty [1]  29/1
down [16]  5/16 13/19 14/1 14/2 20/1
20/11 21/13 21/17 22/11 24/3 24/7
25/19 32/23 33/14 33/14 40/13
draw [1]  40/10
drawn [1]  13/18
driver [1]  42/23
due [2]  41/23 41/24

## E

each [6]  29/20 32/19 34/20 35/17 35/23
37/5
earn [1]  42/3
effect [1]  41/7
eight [1]  35/6
either [3]  39/5 40/18 41/16
employed [1]  9/2
employees [2]  26/11 28/6
employing [1]  14/9

## end [10]  4/17 21/12 29/16 29/17 32/19
32/20 33/6 33/12 33/16 40/16
ending [3]  32/19 33/4 33/6
enter [1]  43/7
entirely [1]  42/8
entitled [2]  43/6 44/4
Esquire [3]  1/14 1/15 1/18
essence [4]  12/3 12/4 16/19 16/23
essentially [2]  5/14 39/9
established [1]  19/5
even [13]  3/18 5/3 8/9 24/11 24/17
30/20 31/18 33/22 36/25 42/1 42/11
42/19 42/24
event [2]  19/25 31/8
eventually [1]  38/1
ever [4]  5/9 6/14 32/22 33/8
every [5]  5/6 6/13 33/3 33/6 42/3
Everybody [1]  14/10
everything [3]  15/15 16/7 35/21
evidence [8]  7/25 31/22 35/25 37/15
37/25 41/7 42/1 42/9
evidencing [1]  39/22
exact [1]  30/8
exactly [3]  32/2 39/16 40/23
example [2]  8/15 8/17
except [1]  22/1
excess [4]  10/13 10/23 33/7 33/18
experience [1]  31/23
explain [4]  4/19 4/24 5/1 14/5
explained [2]  4/4 6/7
explains [1]  4/20
explanation [2]  34/1 34/12
external [1]  13/12

## F

face [4]  15/5 15/19 16/18 17/25
faced [1]  34/15
fact [31]  5/12 7/4 10/12 14/15 15/22
17/8 17/20 19/9 19/24 25/3 28/16 29/18
29/19 30/7 32/2 32/3 34/2 35/12 35/13
35/16 35/18 35/21 36/15 38/23 39/2
40/9 40/20 41/11 41/13 41/24 42/12
facts [1]  7/4
fade [1]  41/15
failed [2]  17/2 18/3
family [16]  14/5 14/6 14/9 14/9 14/9
14/14 14/16 19/1 21/9 23/22 24/8 24/9
24/21 28/1 36/14 37/23
far [2]  7/19 40/16
fault [1]  42/22
faulting [1]  28/5
favor [1]  43/8
federal [1]  18/4
figure [1]  32/13
filed [8]  3/5 4/6 4/8 4/25 21/10 33/25
38/10 38/11
files [1]  4/23
final [2]  35/9 42/11
financial [4]  11/8 17/15 24/22 25/3
financially [5]  17/11 17/12 19/4 19/15
34/10
find [2]  3/3 5/9 5/22 41/12
fine [2]  2/16
first [2]  2/7 7/25
fiscal [2]  33/9 33/16
fist [3]  19/2 20/21 22/12
Floor [1]  1/15
focus [1]  28/15

## F

focusing [1]  28/16
follow [7]  10/9 10/24 12/2 12/5 19/21
26/19 28/24
followed [1]  40/3
footnote [1]  33/9
foregoing [1]  44/2
forms [1]  33/25
forth [2]  3/17 5/7
forward [1]  38/9
frankly [4]  7/7 19/23 42/7 43/2
fraudulent [3]  8/8 15/5 31/1
free [1]  42/2
full [2]  39/16 40/2
fund [1]  28/10
funds [21]  10/17 11/12 13/2 15/8 23/16
23/18 23/25 24/2 24/2 24/3 24/4 24/7
24/8 24/9 24/10 24/11 24/15 24/18
26/11 26/14 28/13
furnished [1]  40/5
future [2]  14/12 34/6

## G

gave [10]  10/1 10/3 16/5 16/6 16/17
29/10 29/21 35/25 36/10 37/1
generally [1]  34/22
generate [1]  42/10
generated [3]  12/21 12/21 25/8
GENESIS [43]  1/4 2/3 2/9 3/25 7/11 9/2
20/11 20/14 21/23 22/1 22/3 22/20
22/22 22/25 23/1 27/2 27/3 27/4 27/16
27/21 37/18 37/22 37/25 38/3 38/5
38/13 38/19 38/23 38/24 39/1 39/3 39/4
39/6 39/13 39/13 39/17 39/24 40/10
40/12 40/14 40/17 41/17 41/25
Genesis' [1]  26/23
genuine [3]  17/19 40/8 41/13
get [26]  4/7 6/23 6/23 7/17 11/24 13/9
13/13 13/15 14/2 14/24 15/13 15/14
15/16 16/15 17/10 18/6 18/6 19/16 21/1
21/16 23/18 24/10 31/2 31/3 33/20 42/2
gets [2]  14/1 40/23
getting [8]  8/4 12/9 13/15 15/20 16/22
19/12 41/22 42/1
give [7]  13/14 15/18 18/6 21/5 21/6 21/6
26/10
giving [1]  28/7
go [24]  2/15 3/12 3/15 10/19 12/5 12/8
13/23 14/11 14/15 17/10 17/17 19/16
24/6 26/7 29/18 31/5 35/16 36/15 37/8
40/17 41/4 41/14 41/15 41/21
goes [1]  3/1
going [15]  3/19 5/14 5/20 5/21 6/5 7/19
12/14 12/25 17/17 21/12 21/16 25/5
28/3 33/24 37/7
gone [2]  16/1 28/15
Good [1]  2/10
got [20]  4/18 10/5 13/2 13/25 16/11
20/16 22/8 23/3 25/17 28/21 28/21
28/22 31/15 31/16 32/15 32/22 36/1
40/17 41/21 41/23
Government [1]  5/1
grace [2]  30/15 37/13
Greenbelt [1]  1/7
grounds [1]  3/7
guess [2]  4/14 14/5
guy [1]  27/9

## H

had [42]  3/14 3/14 4/21 6/24 7/7 7/8
7/14 10/25 14/14 16/24 16/24 17/3
17/13 18/1 19/1 22/11 23/3 23/5 23/5
24/20 26/21 28/1 28/1 32/9 32/13 33/7
33/8 34/23 35/6 35/7 35/7 35/8 35/8
38/24 38/25 39/24 40/14 41/12 42/12
42/17 42/19 42/24
hadn't [1]  7/1
half [1]  9/3
hand [9]  4/16 19/1 20/21 21/2 22/12
39/14 39/14 39/19 39/21
handed [6]  20/1 20/6 20/22 27/17 34/9
39/3
handing [3]  20/11 20/16 22/2
handle [1]  25/2
handled [2]  22/17 24/20
hands [5]  23/6 23/19 24/5 24/24 26/24
happen [1]  30/20
happened [9]  8/6 19/23 22/9 25/15
31/15 32/15 33/16 39/11 41/12
happens [3]  32/8 33/19 34/13
has [28]  3/8 7/18 7/18 8/2 8/6 8/6
8/13 8/22 9/6 13/1 14/22 22/3 23/15
24/10 24/14 24/16 28/10 28/15 29/13
29/23 36/7 37/13 37/18 38/8 40/17 41/8
42/1
hasn't [1]  8/14
have [88]
haven't [1]  9/1
having [3]  8/10 18/21 37/14
Hawkins [64]
Hawkins' [7]  6/6 7/5 23/6 24/2 24/2
26/24 34/1
he [153]
he's [23]  5/14 5/15 8/2 11/16 12/13
13/15 17/11 18/23 20/19 20/21 21/15
21/16 22/19 23/7 23/24 27/8 34/7 36/11
37/9 37/12 41/21 41/22 41/23
healthy [3]  17/11 17/12 19/15
heard [1]  30/25
hearing [1]  2/5
held [7]  10/20 11/14 11/14 14/11 18/25
17/9 22/10
help [3]  18/25 22/11 36/9
here [24]  3/5 9/1 9/5 10/21 12/14 13/1
15/15 16/19 19/7 20/10 21/4 21/10 23/4
23/17 24/17 25/25 27/9 28/17 29/8
29/21 30/1 31/15 40/22 40/24
here's [1]  42/11
heretofore [1]  26/5
herring [1]  22/15
hey [1]  12/8
highest [1]  32/22
him [26]  3/2 5/6 5/25 6/3 10/1 10/23
10/25 11/3 11/6 13/22 15/18 16/17 20/7
20/22 20/22 21/13 21/17 22/23 23/19
24/6 24/6 24/11 24/23 25/4 30/25 39/5
himself [3]  27/8 27/17 27/17
his [43]  4/3 5/15 5/23 8/22 9/14 9/15
12/9 13/3 14/1 14/7 14/9 14/24 15/24
17/13 20/1 20/16 20/25 21/8 21/9 22/6
22/7 22/9 22/10 23/19 23/22 24/4 24/5
24/7 24/11 24/19 24/24 25/18 27/10
27/12 27/13 32/13 32/25 33/24 34/14
36/3 36/4 36/10 37/9
hold [1]  23/7

holding [8]  12/1 22/5 22/13 22/18 24/17
36/6 38/8 38/9
holds [1]  21/14
honest [2]  10/10 11/5
honesty [1]  11/11
Honor [69]
HONORABLE [1]  1/11
hours [2]  5/5 6/12
how [6]  9/24 13/14 16/1 17/6 17/16 36/7
however [3]  19/11 26/10 29/23
Hughes [1]  1/18
hundred [7]  4/18 10/4 12/12 29/17 32/10
32/14 36/21

## I

I'll [2]  4/7 9/11
I'm [24]  5/17 6/3 12/8 13/5 14/4 15/13
15/13 15/14 15/15 16/3 18/10 18/18
19/8 20/4 20/19 23/13 24/9 25/10
25/21 27/1 28/9 28/18 30/14 36/4
identify [1]  2/6
if [42]  3/15 7/4 7/21 9/19 9/21 13/8 13/9
15/12 16/8 16/11 17/5 18/24 19/10
21/10 23/20 23/21 24/8 24/17 25/25
26/18 28/11 28/17 29/17 30/9 30/14
30/20 31/12 31/18 31/23 32/17 33/3
33/5 33/8 33/12 34/23 36/25 41/4 41/4
41/24 42/12 42/19 42/23
ignores [1]  42/7
in [164]
includes [1]  4/16
including [3]  28/20 39/17 39/19
income [5]  38/22 39/18 39/20 41/23
41/24
INCORPORATED [4]  1/4 2/4 2/9 37/18
indefinitely [1]  40/17
indicated [1]  9/13
indicates [2]  14/21 16/7
indicating [4]  13/12 15/3 16/23 18/5
individual [4]  21/3 21/10 27/16 27/17
individuals [1]  18/8
infinity [2]  41/4 42/17
information [8]  11/25 26/10 26/12 26/13
26/17 28/7 38/24 39/5
informs [1]  8/24
injured [1]  42/21
inquire [10]  12/12 12/20 12/25 17/7
17/18 19/18 29/18 35/17 37/4 42/16
inquiring [1]  12/23
inquiry [1]  42/15
inside [1]  24/21
insisting [1]  18/17
insofar [1]  41/19
instance [1]  32/20
instrument [1]  29/12
INT [1]  7/22
intents [1]  2/24
interacted [1]  26/13
interest [27]  3/15 6/16 6/18 7/22 11/20
11/23 12/20 17/16 19/12 19/13 28/21
30/14 30/22 32/1 34/21 34/22 36/19
36/20 37/5 38/21 39/18 39/20 40/3 42/2
42/2 42/3 42/3
internal [4]  13/12 22/6 25/2 28/15
internally [1]  22/9
interworkings [2]  23/14 24/14
into [11]  2/22 3/1 14/14 21/5 26/23
31/25 34/4 40/23 41/21 41/22 41/23

**I**

invalid [4]  15/4 15/10 15/18 16/18
investigation [1]  8/12
involved [1]  27/21
involves [2]  2/17
IRS [1]  33/25
is [143]
isn't [5]  8/4 14/3 21/3 21/23 42/9
issue [8]  4/3 5/20 6/13 15/22 17/19 40/8
 40/8 41/13
it [164]
it's [35]  6/7 6/11 8/15 8/16 9/22 10/19
 11/9 12/17 14/9 15/11 16/11 18/25 21/4
 25/13 25/14 26/18 28/2 28/12 28/14
 28/14 29/19 29/20 31/10 31/17 31/24
 31/25 35/2 36/2 37/3 37/7 39/15 39/24
 41/2 42/7 43/6
its [5]  15/5 15/19 16/18 17/25 40/19
itself [1]  4/20

**J**

January [4]  6/3 8/25 25/16 41/11
January of [1]  8/25
JONES [6]  1/14 1/15 2/8 9/7 30/2 35/9
JUDGE [1]  1/12
Judgment [12]  3/6 4/6 4/8 6/10 34/15
 37/3 37/21 38/14 40/7 43/7 43/8 43/9
judicial [1]  31/23
July [1]  9/2
July of [1]  9/2
June [1]  1/8
just [25]  6/16 9/9 9/12 10/19 10/20
 14/11 18/24 18/25 19/14 22/10 23/7
 25/24 28/2 28/3 30/4 32/1 32/4 33/25
 34/12 34/25 35/1 36/2 41/4 41/5 42/9
justify [1]  15/7

**K**

keep [15]  7/12 7/13 7/20 13/13 17/2
 17/6 24/24 26/18 28/15 28/11 28/12 28/13
 34/19 35/19 35/22 36/17
keeping [6]  15/8 23/15 23/23 24/15
 24/17 37/14
keeps [3]  7/20 16/10 16/25
key [1]  39/2
kind [5]  8/4 17/23 20/19 34/9 42/5
knew [6]  13/2 17/14 17/15 17/18 19/18
 24/5
know [45]
knowingly [1]  41/18
knows [4]  21/23 31/5 31/21 34/14

**L**

Labor [1]  31/13
larger [1]  30/12
last [1]  24/9
later [8]  12/12 25/14 26/17 30/21 30/21
 31/25 35/5 38/17
law [9]  1/14 13/11 18/3 28/25 29/9 29/22
 35/12 35/13 41/4
least [5]  10/2 15/23 25/24 37/5 41/9
leave [1]  10/13
left [2]  34/9 34/9
lent [1]  10/4
less [1]  38/9
let [3]  6/16 35/1 41/20
let's [3]  2/12 16/16 30/15

liability [2]  11/6 11/7
liar [1]  35/13
lie [1]  34/13
lies [4]  32/7 33/19 33/20 40/6
lightly [2]  32/7 33/21
like [6]  9/10 15/15 17/3 23/8 32/10 33/3
limit [2]  12/13 12/15
limitations [20]  8/2 8/16 8/17 9/12 16/2
 16/3 16/5 16/9 28/19 28/23 29/6 29/21
 29/25 34/20 40/24 41/15 42/9 42/14
 42/20 42/21
LINDA [3]  1/23 44/2 44/8
listen [3]  13/25 24/17 27/15
literally [1]  6/12
little [4]  5/16 17/23 18/1 24/20
loan [4]  4/5 33/3 33/11 33/17
loans [2]  32/18 33/3
long [4]  7/7 19/11 29/23 35/8
longer [5]  4/20 4/21 4/24 24/4 40/14
look [12]  3/16 5/14 11/17 21/12 29/9
 30/9 32/17 33/8 33/12 41/21 41/22
 41/22
looked [1]  4/12
looking [1]  19/13
looks [1]  22/15
lose [3]  17/17 19/10 19/17
loses [1]  12/9
loss [3]  33/9 33/10 33/10
losses [2]  4/5 6/8
lost [2]  12/7 42/19 42/20
lot [2]  23/14 42/9
luck [1]  42/24

**M**

machines [1]  37/24
made [2]  12/1 33/2
Madison [1]  1/15
make [8]  9/10 16/8 18/18 21/21 24/13
 25/24 31/19 33/19
makes [4]  10/16 30/7 34/3 34/13
making [3]  18/11 26/21 37/12
man [3]  18/23 19/22 36/10
manufactured [3]  30/24 30/25 31/3
manufacturing [1]  11/7
March [4]  3/10 3/21 30/17 30/18
March 26 [1]  30/17
March 29th [3]  3/10 3/21 30/18
MARSHALL [3]  1/23 44/2 44/8
MARYLAND [10]  1/1 1/7 1/16 1/19
 14/19 15/20 16/20 18/4 29/1 35/12
match [3]  32/2 33/5 34/2
material [4]  15/22 17/20 40/9 41/13
matter [11]  2/2 2/4 16/11 28/23 31/13
 37/19 38/14 40/6 41/3 42/13 44/4
matters [1]  25/3
mattress [3]  2/21 35/3 35/4
may [7]  14/7 17/9 30/14 31/6 32/1 36/4
 38/16
Maybe [1]  20/15
me [11]  6/16 9/1 17/8 18/3 18/20 24/16
 26/10 27/11 28/7 32/11 43/6
mean [11]  9/22 10/25 12/19 10/20 20/4
 31/21 31/22 34/12 35/19 36/16 40/21
meaning [1]  5/23
Means [1]  29/12
members [1]  28/1
memo [1]  5/13
memories [2]  8/18 41/15

mention [1]  6/14
mere [1]  40/20
MESSITTE [1]  1/11
MICHAEL [2]  1/18 2/10
microfiche [3]  3/3 7/14 31/2
might [5]  5/9 6/4 7/8 8/6 8/11 30/21
 41/25
million [1]  36/14
minute [1]  4/7
miracle [1]  7/14
miraculously [1]  41/8
misbegotten [1]  42/7
misdirection [1]  9/4
misleading [1]  11/7
mistake [1]  33/2
mistakes [1]  33/20
Monday [1]  1/8
money [97]
monies [1]  40/15
month [2]  3/14 30/21
months [5]  30/9 30/21 31/19 31/24
 31/25
more [19]  4/18 11/4 17/23 18/1 18/19
 24/11 24/23 25/23 32/12 32/15 32/25
 33/20 34/10 35/7 35/8 36/12 36/19 38/9
 40/25
morning [1]  2/10
most [2]  29/1 33/8
motion [6]  2/13 3/6 4/12 34/16 37/3 43/8
motions [3]  1/11 2/5 37/20
Mr [8]  5/24 6/6 9/7 23/5 24/18 25/16
 33/13 34/12
Mr. [68]
Mr. Barranco [2]  2/12 30/3
Mr. Hawkins [57]
Mr. Hawkins' [6]  7/5 23/6 24/2 24/2
 26/24 34/1
Mr. Jones [3]  9/7 30/2 35/9
Ms [3]  8/19 8/20 8/24
much [2]  32/11 32/15
must [2]  26/15 37/4 37/5
my [31]  4/10 5/3 5/8 5/10 6/21 8/22
 14/24 15/8 15/17 16/17 18/20 22/15
 23/21 24/7 27/15 28/10 28/13 29/5
 29/18 32/11 34/5 36/8 36/18 36/19
 36/21 36/23 37/3 37/3 37/8 37/12 41/8
myself [4]  27/11 34/4 34/8 34/9

**N**

name [7]  11/17 21/4 33/23 34/5 34/8
 34/10 35/11
names [2]  35/20 36/8
NATIONAL [2]  1/7 2/4
nature [1]  10/17
necessarily [1]  9/22
need [13]  10/20 14/12 17/11 18/23
 18/24 19/3 19/14 19/16 23/20
 25/25 26/16 36/16
needed [3]  18/25 24/8 24/9
neither [1]  38/19
NELSON [4]  1/14 1/15 2/8 9/7
never [22]  9/16 13/1 13/2 21/18 21/19
 22/5 23/19 24/10 25/25 32/24 32/25
 33/7 34/4 34/4 34/23 36/1 36/11 37/16
 38/18 41/21 41/21 41/22
nevertheless [1]  3/5
new [2]  26/4 33/3
next [5]  4/13 5/24 32/21 32/22 40/24

**N**

nice [1]  37/12
no [71]
nobody [2]  28/20 42/1
non [1]  32/4
none [1]  34/2
nor [2]  38/19 38/23
not [78]
not that [1]  8/15
NOTES [1]  1/24
nothing [10]  10/21 13/15 16/24 23/15
 24/14 34/15 34/19 37/14 38/22 41/10
notice [6]  7/24 8/5 8/9 12/11 31/16
 31/23
notices [1]  6/23
notifications [1]  8/4
notwithstanding [1]  39/2
now [18]  2/2 3/23 7/3 13/11 14/2 18/15
 19/24 21/2 21/5 21/15 21/25 27/9 27/10
 28/14 35/23 39/1 39/3 40/23
Number [1]  2/3
numbers [1]  34/2

**O**

obligation [9]  8/7 16/24 17/1 17/6 17/8
 25/20 34/20 38/24 42/18
obtained [1]  37/25
obviously [2]  31/15 41/23
occurred [1]  38/19
off [10]  6/14 10/7 10/10 18/23 23/22
 26/23 31/19 33/17 34/4 39/9
offer [1]  13/22
offered [2]  40/11 41/10
office [5]  1/4 2/3 2/9 26/20 37/18
Offices [1]  1/14
OFFICIAL [2]  1/23 44/8
offset [1]  7/9
oh [4]  4/9 4/24 5/9 34/21
okay [4]  14/25 15/17 16/15 16/17
on [100]
one [21]  2/18 3/7 4/13 4/15 7/19 9/10
 9/12 9/20 15/13 15/15 19/16 20/15 21/2
 23/12 30/7 30/16 32/20 38/15 42/19
 43/3 43/4
ones [3]  17/3 35/22 37/1
only [11]  2/21 7/12 7/13 10/21 15/13
 15/14 15/15 21/21 23/23 25/7 38/7
operation [1]  29/25
operations [2]  22/6 28/16
operative [1]  39/2
opportunity [1]  43/3
opportunity when [1]  43/3
opposed [1]  12/2
opposing [4]  16/25 17/23 18/2 35/20
or [26]  7/11 7/12 8/5 13/11 13/12 13/12
 13/15 17/9 18/4 18/5 19/11 28/21 30/9
 30/21 31/16 33/24 34/25 35/2 35/6
 37/15 38/9 39/6 39/22 40/14 40/19
 41/14
ordinarily [1]  40/5
original [7]  3/15 13/1 13/13 13/15 15/12
 32/13 38/4
originally [4]  2/23 2/25 31/11 34/7
other [15]  4/19 4/22 7/10 7/12 7/15 15/7
 27/8 28/1 28/1 29/1 30/18 31/17 34/7
 42/23 43/4

**P**

P-R-O-C-E-E-D-I-N-G-S [1]  2/1
PA [1]  1/18
page [3]  16/7 29/22 29/23
paid [6]  7/11 14/1 20/1 21/13 33/17 39/9
paper [3]  13/7 13/9 13/10
part [6]  3/24 3/24 4/20 9/4 41/16 41/16
parties' [1]  37/20
parts [1]  9/11
party [1]  43/3
pass [2]  41/4 41/8
passed [1]  40/25
passes [1]  39/5
pattern [1]  14/16
pay [9]  9/17 9/21 13/19 13/21 14/2
 14/23 16/9 18/13 21/17 25/19 30/14
 31/6 34/3 34/8 34/21 42/3
payable [1]  7/11
paying [6]  14/14 20/11 23/21 34/23
 34/24 40/20
penalty [6]  4/25 30/14 30/22 31/6 32/1
 40/20
people [3]  26/12 27/23 28/1
percent [2]  3/15 42/22
perhaps [1]  7/11
period [10]  3/25 12/13 15/6 15/10 25/12
 30/11 30/15 30/19 40/19 41/1
perjury [1]  5/1
person [2]  13/13 38/7
personal [1]  14/7
PETER [1]  1/11
picture [1]  41/17
piece [1]  13/7
PJM [2]  1/5 2/3
plaintiff [29]  1/5 1/14 2/7 2/9 2/18 3/5
 4/19 7/17 7/18 7/18 8/19 8/9 9/9 9/5
 16/15 17/2 17/7 19/6 19/9 20/10 22/19
 22/20 22/25 23/1 26/13 40/10 40/13
 41/3 43/9
plaintiff's [4]  4/8 40/11 42/5 42/6
plaintiffs [1]  41/10
plead [1]  38/15

plus [5]  11/1 11/21 11/23 21/17 33/10
PNC [20]  1/7 2/4 2/11 2/18 2/22 2/24
 3/1 3/7 3/8 6/24 6/25 12/7 30/24 30/25
 34/4 34/24 37/19 38/1 38/4 38/5
PNC's [2]  3/6 7/6
pocket [2]  23/21 24/7
pocketed [1]  24/3
point [12]  8/3 12/22 14/18 16/14 16/19
 18/17 18/18 20/24 30/12 40/15 42/11
 42/19
pointing [1]  35/21
points [1]  30/5
Pope [1]  1/18
position [1]  12/4
possessing [1]  38/15
precisely [1]  6/5
predecessor [1]  2/24
prefer [1]  2/15
prejudice [1]  8/16
prejudiced [1]  8/13
prepared [1]  4/3
preparer [5]  10/1 25/18 25/18 25/19
 36/4
preparing [1]  5/15
primary [1]  3/7
principal [1]  21/9
principally [1]  20/21
prior [1]  12/25
probably [1]  36/13
proceedings [2]  1/11 44/3
produced [3]  3/24 4/2 7/18 25/7
programs [1]  17/16
promise [6]  14/23 16/8 16/8 29/14 29/15
 29/16
promised [4]  15/21 16/20 35/14 35/22
properly [1]  33/24
property [1]  40/15
provide [3]  17/8 18/3 26/9
provided [2]  14/20 28/25
providing [1]  17/24
provision [16]  12/16 12/16 16/4 16/12
 17/5 17/14 19/12 19/18 26/18
 28/11 28/12 29/3 29/16 30/1 36/21
punish [1]  17/2
purposes [2]  2/24 4/22
pursue [1]  38/24
put [13]  2/20 17/6 19/14 23/6 23/18 24/5
 24/6 24/24 25/22 35/2 36/10 36/13
 36/13
putting [4]  19/1 20/21 22/12 30/15

**Q**

question [3]  12/11 27/15 40/24
questions [4]  5/6 5/8 9/6 18/2
quote [1]  28/23
quote-unquote [1]  28/23
quoted [2]  16/6 29/22

**R**

raised [1]  30/5
ran [1]  23/22
rate [1]  3/15
rates [1]  34/22
rather [1]  9/8
rationale [1]  42/8
really [14]  3/6 9/5 13/5 20/19 21/3 23/20
 28/14 33/15 33/16 39/10 40/16 40/23
 41/10 42/11

Otherwise [1]  11/7
our [10]  4/1 4/12 4/25 5/9 5/13 6/4 6/5
 8/25 30/8 31/3
out [26]  2/18 2/23 2/25 3/4 3/17 5/22
 14/18 16/5 16/14 26/1 28/17 30/7 30/13
 30/16 30/17 30/20 31/7 31/11 31/17
 31/24 31/25 32/24 35/21 36/15 41/17
 42/24
outside [1]  40/1
over [20]  3/4 7/2 7/6 8/2 8/10 9/2 12/7
 13/14 14/14 17/10 19/2 20/16 20/21
 22/2 22/12 26/11 34/18 34/21 39/14
 39/14
owe [10]  10/25 18/22 20/22 23/19 24/11
 25/23 36/18 36/19 36/21 36/23
owed [12]  10/12 10/23 10/25 11/3 20/7
 24/23 27/11 32/11 32/25 36/12 39/5
 39/8
owing [1]  39/16
own [9]  4/3 5/3 5/10 23/2 24/11 31/23
 33/1 33/24 34/5
owned [6]  6/1 37/23
owner [3]  20/23 22/24 41/25
owner's [1]  2/20
owns [2]  22/24 22/25

## R

reason [5]  4/10 4/10 15/11 32/11 34/17
reasonably [1]  42/15
reasons [1]  43/10
received [9]  7/1 8/10 11/21 14/22 15/21 29/14 38/18 38/20 38/20
receiving [4]  7/21 7/22 7/23 8/2
Recess [1]  43/14
record [10]  3/2 25/4 25/4 25/6 25/9 25/11 26/9 39/7 43/10 44/3
records [45]
red [1]  22/15
redeem [14]  12/25 14/11 14/15 15/10 18/24 19/9 22/11 25/12 30/23 31/5 35/23 38/8 38/17 41/2
redeemed [29]  3/9 3/10 3/21 3/22 4/1 9/20 14/24 15/3 15/6 15/9 15/24 16/23 17/21 18/12 18/16 22/5 26/8 26/12 30/8 30/17 31/12 36/2 37/10 37/11 37/15 37/16 40/2 40/23 41/2
redeeming [3]  18/20 25/5 40/12
redemption [3]  15/7 25/12 38/18
reduction [2]  4/13 39/21
referenced [1]  5/12
referring [1]  35/20
reflect [2]  6/1 6/4
reflected [1]  10/22
refute [1]  33/1
Regardless [1]  22/6
regular [1]  14/7
regulation [3]  13/12 14/20 18/4
relative [1]  14/10
relay [1]  23/13
relies [1]  38/23
remaining [1]  10/7
remedy [1]  29/24
remember [1]  32/14
remove [1]  29/2
removed [1]  38/10
removes [1]  16/9
renewable [2]  28/20 28/24
renewal [25]  3/14 6/23 7/21 12/16 12/16 12/18 13/8 16/4 16/12 17/4 17/5 17/14 19/12 19/19 26/18 28/11 28/12 29/3 29/16 30/1 30/19 31/16 36/20 36/25 40/19
renewals [1]  3/14
renewed [6]  3/17 13/3 13/4 29/20 29/20 37/7
repaid [1]  33/13
repay [2]  4/5 29/14
repayment [2]  33/10 33/10
reply [2]  5/13 30/3
report [2]  11/23 42/1
reportable [1]  38/21
reported [3]  6/17 6/18 39/18
REPORTER [3]  1/23 44/1 44/8
reporting [1]  11/25
representing [1]  22/22
represents [1]  21/9
required [4]  7/13 7/20 8/16 35/14
requirement [1]  12/20
requirements [1]  37/8
research [3]  3/2 15/1 15/1
resolved [1]  40/7
response [4]  4/1 4/8 4/23 5/8
retain [1]  8/14

retained [1]  8/14
retitled [2]  34/4 34/5
retrieved [2]  21/18 21/20
return [7]  9/25 10/4 15/21 16/20 22/8 35/14 35/15
returned [1]  22/14
returning [1]  22/13
returns [8]  4/10 4/11 5/21 5/25 6/4 33/5 35/21 36/10
Reverend [1]  1/14
revised [1]  29/24
RICKEY [2]  1/14 1/14
Ricky [1]  2/8
right [12]  2/6 2/12 9/7 23/4 26/2 26/25 28/10 30/2 31/4 34/17 35/9 37/17
road [4]  1/19 22/11 24/3 24/7
roll [1]  34/21
rollover [3]  30/10 31/16 32/4
Ron [2]  32/18 33/3
Ronald [1]  37/24
roughly [2]  14/18 40/25
RPR [1]  44/8
rule [5]  8/9 13/12 13/12 18/3 29/24
rule that [1]  29/24
run [2]  27/11 36/15
rush [3]  5/18 15/7 31/1

## S

safe [3]  17/15 17/18 19/19
safekeeping [2]  20/8 20/9
said [31]  5/13 5/14 9/14 9/15 9/15 9/16 9/16 11/17 13/18 13/18 13/20 14/25 14/25 16/15 17/13 18/12 24/17 25/16 25/17 25/19 26/1 26/2 26/4 27/9 27/14 30/25 32/10 34/14 39/10 43/3 43/4
sales [1]  37/23
same [3]  9/23 23/12 43/1
sat [1]  29/17
satisfaction [2]  39/4 39/15
satisfied [2]  20/16 21/14
satisfy [2]  20/7 20/8
say [28]  5/2 5/9 5/24 9/6 12/4 12/8 12/14 13/17 15/17 15/24 17/7 20/18 20/19 21/21 22/12 19/22 25/15 27/10 31/24 32/9 32/18 33/9 34/3 34/21 38/7 38/19 39/1 41/1
saying [27]  11/10 12/1 12/4 14/1 14/1 14/3 14/4 15/13 16/25 18/15 19/6 19/8 19/24 19/25 21/2 21/5 21/7 21/25 22/24 24/1 25/11 25/21 27/9 28/9 28/19 33/22 34/7
says [23]  3/1 4/9 4/24 5/22 6/2 6/3 7/1 9/1 18/11 19/22 19/22 25/15 27/10 31/24 32/9 32/18 33/9 34/3 34/21 38/7 38/19 39/1 41/1
seat [1]  37/17
second [2]  6/21 32/5
secondary [1]  8/1
Section [2]  14/20 29/10
secure [2]  34/6 34/11
see [10]  3/12 3/16 5/20 5/21 19/13 34/22 36/6 36/7 40/25
seems [1]  24/16
sending [1]  17/1
sense [4]  24/2 24/5 34/3 34/13
sent [1]  6/20
September [3]  3/11 3/22 31/12
September 9th [2]  3/11 31/12

services [1]  37/23
seven [3]  7/12 7/13 35/6
several [2]  5/5 26/2
sham [4]  6/10 7/5 32/8 34/16
shareholder [1]  33/11
she [3]  8/24 9/1 27/25
she's [1]  8/25
sheet [2]  5/15 11/5
should [4]  15/24 19/6 19/8 24/19
shoulder [1]  17/7
show [7]  3/3 7/5 7/8 11/6 24/13 33/24 39/17
showed [4]  4/12 4/15 7/14 10/1
showing [6]  11/1 15/23 17/20 37/10 37/10 41/9
shown [4]  4/11 7/10 7/16 10/18
shows [9]  3/8 3/16 3/25 7/25 25/11 32/18 33/15 37/25 39/7
side [2]  28/8 42/6
sign [3]  13/14 15/14 18/7
signature [8]  13/15 15/19 16/21 17/21 25/5 35/24 37/10 37/14
significant [2]  15/11 15/11
simple [1]  36/2
simplistic [1]  20/19
simply [8]  10/19 11/14 11/25 13/1 14/11 17/17 19/17 38/13
since [1]  9/2
single [1]  37/19
sir [2]  32 37/17
sit [1]  19/10
sitting [2]  21/19 22/8
situation [2]  40/6 42/5
six [3]  3/14 30/9 31/24
six-month [1]  3/14
slight [3]  30/21 31/6 40/20
sloppy [1]  31/1
Slow [1]  5/16
so [70]
some [17]  3/3 4/2 7/11 7/14 9/18 12/20 12/22 18/1 18/2 18/25 28/15 32/13 38/17 39/15 40/20 42/15 42/17
somebody [9]  13/14 15/20 18/5 21/24 25/15 26/19 27/18 27/19 41/25
somehow [3]  28/19 28/22 33/23
something [14]  7/24 8/5 8/6 8/11 14/18 15/2 16/25 17/9 17/18 21/24 23/9 23/9 24/19 33/17
sometime [1]  38/11
sorry [3]  5/17 20/10 38/4
sought [1]  38/16
SOUTHERN [1]  1/2
special [1]  24/21
specific [1]  5/13
specifically [1]  5/19
spending [1]  23/13
spin [2]  33/19 34/13
spinning [1]  32/7
spreadsheet [1]  32/17
start [2]  32/6 32/7
started [1]  5/10
starting [1]  3/20
state [3]  35/12 37/7 38/12
stated [1]  43/10
statement [13]  4/3 7/22 10/3 15/2 15/9 15/18 16/18 16/22 17/24 32/16 33/2 41/9 42/2
statements [28]  3/3 3/7 3/12 3/16 3/20

## S

statements... [23]  6/20 6/21 6/23 7/15
 7/15 7/21 8/3 11/8 11/20 12/9 12/20
 12/21 28/21 28/22 30/8 33/15 36/19
 38/20 38/21 39/9 40/3 40/4 41/22
states [4]  1/1 1/12 29/1 29/22
status [1]  42/16
statute [10]  8/17 9/12 16/5 16/9 28/22
 29/6 29/21 29/25 29/25 42/8
statutes [1]  29/3
STENOTYPE [1]  1/24
stick [1]  35/4
still [4]  18/10 18/17 31/24 41/25
stopped [1]  5/2
submit [2]  13/5 13/7
submitted [3]  13/1 15/4 18/2
subpoena [2]  4/1 9/1
subpoenaed [2]  4/1 8/23
subsisting [2]  29/2 29/4
successor [1]  2/25
such [1]  31/1
sudden [1]  19/17
sue [2]  8/7 42/23
sued [3]  35/6 35/8 37/19
suffer [1]  30/21
sufficient [1]  29/2
suggested [1]  30/24
suggestion [1]  38/13
suggests [1]  42/17
suit [3]  3/5 7/7 38/9
Suite [1]  1/15
sum [3]  14/22 29/13 29/14
Summary [12]  3/6 4/6 4/8 6/10 34/15
 37/3 37/20 38/14 40/7 43/7 43/7 43/9
suppose [1]  12/12
supposed [2]  12/14 17/3
sure [3]  13/6 25/24 28/18
swapped [1]  32/11
SYSTEMS [4]  1/4 2/3 2/9 37/18

## T

take [10]  12/3 13/10 18/9 23/21 30/13
 31/7 31/17 31/23 31/24 31/25
taken [9]  2/23 2/25 10/7 10/9 13/22
 30/16 30/17 31/11 39/24
takes [1]  16/4
taking [4]  6/14 14/16 22/2 37/1
talk [4]  9/14 25/17 37/8 39/11
talked [1]  25/18
talking [7]  6/24 16/10 23/14 27/1 31/13
 36/3 36/11
tax [37]  4/2 4/10 4/11 4/17 4/17 4/19
 5/20 5/25 6/4 6/14 9/25 10/1 10/3 22/16
 22/17 24/19 25/3 25/18 25/18 25/18
 32/19 32/20 33/5 33/6 33/13 33/15
 33/25 35/21 36/4 36/10 38/22 39/17
 39/20 39/22 41/23 41/24 42/2
tax due [1]  41/23
taxes [3]  4/25 36/3 37/13
television [2]  17/16 19/13
tell [4]  3/2 7/9 26/22 28/6
teller [1]  7/9
ten [16]  7/20 7/23 8/11 11/21 11/23 16/1
 16/10 19/11 25/14 26/16 26/17 28/7
 28/22 35/2 40/25 41/14
tend [1]  5/17
terminated [1]  41/10

terms [6]  14/8 37/2 37/2 37/4 37/6 37/7
testified [1]  8/22
testifies [1]  8/24
testimony [3]  2/20 5/13 6/12
than [12]  4/18 11/4 18/19 24/11 24/23
 25/23 32/12 32/15 32/25 36/12 36/19
 40/25
Thank [7]  2/14 9/9 30/2 37/17 43/11
 43/12 43/13
that [257]
that's [37]  4/18 6/5 6/21 9/5 9/6 9/20
 10/20 11/22 13/21 14/17 15/10 15/11
 17/1 17/19 18/14 18/22 20/16 20/19
 21/14 21/24 22/5 22/21 23/22 27/14
 27/15 29/15 32/9 33/19 34/13 37/6 40/6
 41/4 41/5 41/15 42/3 42/5 42/20
their [8]  15/7 17/1 21/14 22/13 24/21
 33/1 33/1 40/24
them [42]  2/21 5/3 5/4 5/10 9/24 9/24
 10/14 10/20 11/14 11/14 12/6 12/25
 13/2 13/11 14/11 20/6 22/2 22/18 22/24
 23/3 23/3 23/4 23/5 23/5 23/15 23/19
 24/3 24/15 31/3 34/5 34/5 34/9 35/3
 35/3 35/4 35/5 36/5 37/14 38/9 38/17
 41/2 41/25
then [21]  2/7 2/7 4/3 5/24 6/9 7/23 9/10
 9/11 15/17 16/9 19/7 19/16 31/10 32/22
 32/23 33/8 34/1 34/15 38/4 38/5 38/16
theory [1]  23/11
there [39]  3/6 4/13 4/15 6/7 6/16 6/18
 8/11 9/18 10/20 11/20 12/6 12/8 14/24
 15/12 16/23 17/10 17/14 18/5 19/14
 19/18 21/3 21/19 22/12 24/4 24/8 24/10
 25/5 25/14 29/5 29/8 29/17 35/16 39/7
 39/18 39/20 40/8 41/16 42/9 43/6
there's [25]  8/8 9/4 10/21 11/23 12/13
 12/15 12/15 12/16 12/20 15/22 15/23
 16/11 17/19 17/20 18/16 18/20 19/11
 29/7 29/20 30/15 34/20 37/8 40/11 41/6
 41/7
thereafter [2]  40/19 42/15
therefore [4]  10/13 14/10 24/24 29/5
these [14]  2/20 3/2 5/9 6/25 7/5 7/14
 23/24 24/7 24/8 30/25 31/2 34/18 34/23
 39/9
they [153]
they're [12]  11/7 17/12 21/7 22/2 22/14
 24/1 24/2 24/4 24/21 25/23 31/8 33/22
they've [2]  16/19 22/8
thing [10]  5/24 8/21 9/21 39/3 16/14
 21/21 24/21 32/5 32/5 36/18
things [5]  10/17 17/10 18/22 25/1 36/8
think [20]  7/25 8/11 11/24 12/13 12/19
 12/19 14/1 20/17 21/25 26/16 28/2 30/5
 31/21 31/22 32/3 32/4 32/14 34/19
 34/25 35/1
thinking [2]  14/8 17/12
Third [1]  1/15
this [78]
those [8]  3/12 5/3 7/15 8/6 25/1 25/7
 27/11 36/19
though [3]  3/19 5/4 19/21 21/12 21/22
 24/11 28/20 29/7 33/22 42/24
thousand [2]  10/4 36/21
three [6]  8/7 30/18 31/9 31/19 31/25
 42/24
through [3]  3/12 3/15 5/22
time [20]  3/23 3/25 4/7 5/8 5/8 6/2 6/13

7/7 15/3 16/8 20/15 23/14 27/25 30/10
 30/13 31/8 31/20 35/8 41/1 42/15
times [1]  26/3
titled [3]  33/23 34/8 34/9
today [4]  3/6 22/24 22/25 41/20
told [1]  27/19
took [10]  2/18 20/5 24/3 25/25 26/20
 27/10 27/16 30/20 40/10 40/13
total [1]  9/4
totally [3]  18/22 25/1 42/7
Towson [1]  1/19
transaction [2]  27/21 38/25
transcript [2]  1/11 44/3
TRANSCRIPTION [1]  1/24
transfer [1]  7/11
transferred [1]  39/25
transfers [1]  21/24
transition [1]  12/6
Treanor [1]  1/18
treat [1]  22/23
treated [3]  5/3 24/10 33/24
treating [2]  5/2 5/10
trigger [1]  42/14
true [2]  41/5 43/1
Trust [2]  12/7 38/3
try [3]  15/7 42/10 42/13
trying [7]  5/2 18/18 20/19 22/14 22/23
 23/13 24/13
Turn [1]  29/10
turned [1]  26/11
turns [1]  32/24
TV [1]  34/22
Twelve [1]  41/7
two [6]  2/18 3/6 18/22 25/1 25/8 30/21

## U

U.S [1]  5/1
under [5]  2/20 4/25 8/9 35/3 35/4
understand [9]  11/10 11/15 11/16 21/25
 23/11 24/1 25/23 28/18 32/16
understands [1]  30/6
undisputed [2]  7/4 7/25
unfortunate [2]  28/14 28/15
UNITED [2]  1/1 1/12
unless [1]  9/5
unlike [1]  29/1
unquote [1]  28/23
until [1]  10/20
up [13]  6/9 9/1 12/5 21/12 32/2 32/8
 32/17 33/2 33/5 34/2 34/16 36/20 41/8
urged [1]  41/12
us [4]  17/24 21/5 21/6 40/23
use [2]  9/24 14/12
used [21]  4/4 4/21 6/8 9/17 9/21 13/21
 14/2 18/11 18/12 18/13 18/19 19/25
 21/15 21/17 24/23 25/19 26/21 26/22
 39/13 40/13 40/21
using [4]  14/6 26/22 37/13 40/12
usually [1]  30/14

## V

valid [9]  15/24 16/22 17/25 25/4 25/11
 25/14 42/19 42/21 42/24
value [1]  32/12
verify [1]  40/2
versus [4]  2/4 18/12 29/1 34/24
very [8]  13/6 27/15 30/10 31/8 31/17
 32/3 33/15 36/20

## V

video [1]  15/19
view [1]  41/8
violated [1]  16/19

## W

wait [2]  42/16 42/17
waited [1]  42/13
walk [5]  18/5 18/9 24/7 28/17 31/25
walked [2]  14/24 24/16
walks [1]  15/12
want [11]  9/9 14/18 16/14 18/19 19/21
  20/18 25/24 25/24 26/6 28/2 31/20
wanted [5]  21/10 28/3 34/3 34/5 34/8
wants [1]  14/2
was [123]
wasn't [11]  10/11 10/22 11/10 12/23
  13/3 18/16 22/16 24/19 25/2 27/18
  42/14
watching [1]  17/15
way [14]  4/6 5/6 6/13 10/8 10/23 14/5
  21/14 22/9 22/17 23/22 24/14 24/20
  25/2 36/18
we [38]  3/23 4/1 4/6 4/8 4/11 5/20 5/21
  7/8 7/10 7/12 7/14 7/15 7/17 8/14 10/5
  14/25 16/16 24/17 24/24 25/22 25/23
  25/23 25/24 25/24 25/25 28/17 31/1
  31/3 31/3 34/18 34/19 35/6 35/7 35/7
  35/7 41/12 43/3 43/4
We'll [1]  5/22
we're [4]  3/5 23/13 28/16 33/24
weekend [1]  31/13
well [26]  4/7 4/9 4/24 5/5 5/9 10/12 11/5
  11/13 12/23 13/17 18/23 19/4 21/1 21/3
  22/16 23/3 24/22 25/19 27/10 28/18
  32/15 34/3 34/21 35/3 37/3 43/4
well-being [1]  24/22
went [11]  2/22 5/7 6/6 7/16 16/15 24/3
  24/10 26/23 28/11 32/23 34/4
were [46]
weren't [3]  10/19 17/1 30/8
what [72]
what the [1]  7/9
what's [3]  12/14 33/5 36/22
whatever [9]  2/16 10/25 19/23 32/9 36/3
  39/25 40/13 40/14 40/15
whatnot [1]  7/12
whatsoever [2]  37/15 38/25
when [26]  3/16 3/16 5/15 8/25 10/2
  12/15 12/16 15/21 16/11 16/14 19/18
  19/23 20/1 23/1 25/21 25/22 28/10 32/6
  32/7 33/19 34/13 34/15 41/1 41/7 41/11
  43/3
where [15]  4/9 5/7 6/12 7/16 11/13 12/6
  14/8 15/17 16/17 22/15 29/22 32/9
  36/11 40/6 42/9
whether [6]  35/2 39/16 40/8 41/21 41/22
  41/23
which [19]  4/16 4/18 4/25 5/6 12/13
  15/10 16/12 21/5 25/15 27/11 38/1 38/3
  38/21 40/4 40/5 40/10 40/12 40/24 43/1
who [28]  8/3 8/4 14/9 15/13 18/5 23/3
  23/5 25/15 26/11 26/11 26/12 26/20
  26/22 27/2 27/2 27/4 27/4 27/4 27/6
  27/9 27/16 27/21 27/24 28/6 35/22
  35/25 38/15 40/23
whoever [3]  11/17 26/11 36/1

whole [1]  32/5
whose [2]  21/4 23/3
why [20]  4/24 5/25 6/4 8/17 10/9 11/1
  11/24 12/23 12/24 13/21 15/11 15/25
  16/1 17/7 18/24 20/23 26/19 32/11 34/1
  35/17
will [2]  43/7 43/9
wisdom [1]  37/13
wise [1]  17/24
wisest [4]  22/16 24/20 25/2 36/5
withdraw [2]  31/20 40/18
withdrawal [1]  13/7
withdrawn [2]  40/21 41/7
within [8]  8/7 15/9 22/6 30/18 31/9 40/19
  42/15 42/23
without [2]  9/24 35/9
witnesses [3]  8/18 35/25 41/14
word [1]  35/9
words [7]  4/19 7/10 15/7 27/8 30/18
  31/17 34/7
works [1]  2/16
worried [2]  12/17 13/3
worth [7]  10/13 11/4 11/12 24/12 24/24
  25/23 36/12
would [32]  4/19 7/3 7/8 7/9 7/10 7/10
  7/16 9/10 10/10 10/14 11/5 12/4 14/12
  14/12 15/15 18/24 22/8 24/8 30/20
  31/18 31/19 34/10 34/19 35/6 35/7
  35/18 38/21 40/4 41/19 41/23 41/25
  42/13
wouldn't [1]  10/10
written [4]  25/7 25/9 25/10 25/11
wrong [2]  8/6 8/11

## Y

year [30]  3/19 3/20 4/13 4/15 4/17 4/17
  8/25 9/3 19/19 19/20 24/9 25/16 29/20
  30/9 32/19 32/20 32/21 32/22 33/3 33/6
  33/9 33/13 33/16 34/20 35/17 35/23
  37/5 39/20 39/22 42/3
years [39]  2/21 4/2 7/13 7/14 7/20 7/23
  8/7 8/11 11/21 11/24 12/12 16/1 16/10
  16/11 19/11 25/14 26/16 26/17 28/7
  28/12 28/22 29/17 35/2 35/2 35/2 35/5
  35/6 38/17 40/25 40/25 41/3 41/8 41/14
  41/21 41/24 42/12 42/13 42/16 42/24
yes [13]  2/8 8/20 9/19 11/19 12/22 20/3
  20/13 23/18 25/1 26/6 27/13 29/9 29/9
yet [1]  22/25
York [1]  1/19
you [149]
you're [30]  6/4 6/24 7/21 7/21 7/22 7/23
  11/10 12/1 14/1 14/1 14/3 19/12 19/13
  19/15 19/23 19/25 20/17 21/2 21/12
  21/25 22/23 22/24 23/8 25/22 26/21
  28/5 28/7 28/19 31/13 42/24
you've [2]  4/17 26/2
your [95]
yours [3]  30/13 30/22 31/7
yourselves [1]  2/6

## Z

zero [3]  7/18 33/14 39/20